63 So.2d 196 (1952)
KAUFMAN
v.
KAUFMAN.
Supreme Court of Florida, en Banc.
August 5, 1952.
On Rehearing January 20, 1953.
Caldwell, Parker, Foster & Wigginton, Tallahassee, for appellant.
Horn & Ossinsky, Charles W. Luther and Walter Shelley, Daytona Beach, for appellee.
*197 CHAPMAN, Justice.
This is an appeal from a final decree awarding separate maintenance unconnected with a divorce entered in the Circuit Court of Volusia County, Florida. The decree fixed Lotty Kaufman's separate maintenance in the sum of $3,900 per annum and counsel fees for her attorney in the sum of $4,000. The parties lived in Toms River, New Jersey, prior to moving to Daytona Beach, Florida, approximately three years ago and prior to their separation. The husband purchased a duplex apartment at Daytona Beach and occupied the lower apartment as a home and rented the upper one for $60 per month. The apartment was valued at from $20,000 to $22,000. It does not appear in the record the amount appellant paid for the apartment.
On November 10, 1950, when the husband left his wife at Daytona Beach and returned to Toms River, New Jersey, he was approximately 80 years of age and the wife was 60. When the separate maintenance suit was filed in November, 1950, the husband Samuel Kaufman, had a substantial sum of money on deposit with a bank at Daytona Beach and bonds and other property in a safety deposit box at the same bank. The wife, Lotty Kaufman, had a bank account and a separate safety deposit box at the same bank. An inventory thereof, as made by Judge Frederick, disclosed a savings account appearing in the name of Lotty Kaufman in the sum of $1,352. The wife's safety deposit box contained bonds in the sum of $835, also three diamond rings containing 18 large diamonds and numerous small ones having a total value of between five and six thousand dollars. The modest scale of living on the part of the Kaufmans is characterized as "miserly". During the thirteen years prior to the separation the husband gave his wife a $10 weekly allowance, which she spent for clothes, cosmetics and other personal items.
Honorable Herbert B. Frederick, Circuit Judge, on December 12, 1950, heard the wife's application for support and maintenance and counsel fees, and entered an order requiring Samuel Kaufman to pay to his wife, Lotty Kaufman; (1) the sum of $30 per week; (2) the sum of $400 as temporary counsel fees; (3) the wife was granted the right to occupy the downstairs apartment as her living quarters free of rent; (4) the costs of maintenance of the property, such as taxes, insurance, water rents, sewer rents and all other necessary alterations and repairs on the apartment house to be paid by the husband; (5) costs of litigation in the sum of $50 was allowed the wife. The order is dated December 12, 1950.
On December 14, 1950, Samuel Kaufman answered the bill of complaint as filed by his wife, Lotty Kaufman. The reason set out in his answer for separating from his wife was that she "constantly nagged and abused him". That she requested him to give "her money to take care of her relatives" and wanted him to convey to her all his property. The defendant is approximately 80 years of age and is subject to heart attacks, and that the nagging and mistreatment on the part of the wife causes the heart attacks to become longer and more violent. The husband specifically denied that it was his intention to withhold from his wife the means of support but had supported her and furnished a home, sent her money and was willing and able to support her according to his station in life. That the wife was never penniless or without the means of support, but she had money on deposit in the bank to check on; government bonds in a safety deposit box at the bank; and additional thereto, at the time of bringing her bill of complaint, owned and possessed rings and diamonds of the value of between $5,000 and $6,000. The answer admitted that the husband owns property and other assets and is financially able to support his wife, but the total value of his property is not set out in the answer.
On January 20, 1951, Judge Frederick made and entered an order in the cause (Tr. 46-49). The order recites that "Lotty Kaufman was not on the date of filing her bill of complaint, to-wit, November 18, 1950, (as is alleged therein) and is not now without means or funds with which to support herself during the pendency of this suit and that she will not be left penniless as *198 alleged unless the Court retains within its jurisdiction cash funds belonging to the defendant, Samuel Kaufman." * * * "The plaintiff, Lotty Kaufman, had admitted that the defendant (Samuel Kaufman) and she had refused $22,000 for the premises in which she now resides now within the jurisdiction of this Court." The order dated December 12, 1950, which required the payment of $400 attorneys fees and $50 as costs and expenses was vacated. A check in the sum of $450 payable to counsel for plaintiff-appellee under the order dated December 12, 1950, was duly surrendered "with admission of the impropriety of allowing such fees and costs under the circumstances." The check was returned to counsel for defendant-appellant.
The order of Judge Frederick dated December 12, 1950, directed Samuel Kaufman to pay Lotty Kaufman the sum of $30 per week and allowed the wife to remain in the downstairs apartment as living quarters. Judge Frederick became ill and another Judge was assigned to Volusia County. On April 21, 1951, a petition was presented for additional support and maintenance on the theory that Lotty Kaufman was unable to live on $30 per week, as costs of living had materially increased and the $30 per week allowance was insufficient. The same petition prayed for additional counsel fees. The Court heard the parties and entered an order increasing the temporary support and maintenance from $30 to $40 per week. Other provisions appear in the order but a recital thereof is unnecessary for a disposition of this controversy.
Counsel for Lotty Kaufman filed in the Court below a motion for an order to show cause why Samuel Kaufman should not be held in contempt for the violation of the order requiring him to pay his wife the sum of $40 per week, as Kaufman was in arrears in his payments in the amount of $90. Also, Kaufman had failed to submit himself to discovery proceedings according to stipulations of counsel. On June 21, 1951, (Tr. 74), Samuel Kaufman, through counsel, answered the motion for an order to show cause on discovery proceedings and represented that he was over 80 years of age; that he resided at Toms River, New Jersey; that he was in failing health and did not feel physically able to travel the distance from Toms River, New Jersey, to Daytona Beach, Florida incidental to the alleged discovery proceedings, but was willing to answer all questions propounded to him at Toms River, N.J., pertinent to the issues made by the pleadings in the case at bar. Kaufman further set out that he was not in arrears in his alimony payments, but had sent checks each month pursuant to the Court order dated December 13, 1950. That the wife had obtained rents from the tenant in the apartment, which, if correctly credited to the alimony claims, would clear him of being in arrears in alimony payments as charged.
Honorable Don Register was assigned to Volusia County and heard the evidence of the parties on the issues presented and thereafter held: (1) that Samuel Kaufman was in arrears in support and maintenance money in the sum of $130; (2) he allowed Lotty Kaufman's counsel a fee of $75 for services rendered incident to the contempt proceedings; (3) that Kaufman was in contempt because of his failure to appear in Volusia County in connection with the discovery proceedings; (4) he was further ordered to appear in the Circuit Court of Volusia County, Florida, at 10:00 o'clock A.M., June 28, 1951, for the discovery proceedings, and in default thereof that he pay the estimated costs and expenses of $500 for the appellees counsel in going to Toms River, N.J., to take the depositions. On June 29, 1951, Honorable Don Register entered a second order in the cause in which he held that Samuel Kaufman was in contempt. Arrears in support and maintenance money, with counsel fees, were assessed and made a lien on the apartment of Samuel Kaufman. The rent on the upstairs apartment in the sum of $60 per month was given to Lotty Kaufman. The estimated costs of her counsel going to Toms River and returning in amount of $500 was entered as a judgment against Kaufman. The Court enjoined Samuel Kaufman from taking any steps in the cause. His answer then in the record was stricken, a decree pro confesso entered against him and the cause ordered to proceed ex parte. The same *199 order provided for the arrest of Kaufman, with directions that he be brought before the Court to show cause why he should not be punished for contempt of Court.
The Chancellor referred the cause to a Special Master, who heard the testimony of Mrs. Matilda Schott, Lotty Kaufman and attorney Gordon F. Mac Calla and thereafter, on July 19, 1951, a final decree was entered for the plaintiff-appellee. It was decreed that Samuel Kaufman should pay to Lotty Kaufman, his wife, the sum of $3,900 per annum as alimony at the rate of $75 per week. An attorney fee in behalf of the wife's attorney was fixed at the sum of $4,000. Items of cost likewise were assessed against the husband and made, by the terms of the decree, a lien on the apartment owned by Samuel Kaufman. The Court retained jurisdiction to enforce the decree, and further for the punishment of Samuel Kaufman for contempt of Court. Kaufman appealed.
The statute under which the case at bar was brought recognized the right and authority of a husband to fix the standard of living for himself and family. This right and authority exists now in the husband and such prerogative, in the absence of statutory authority, cannot be usurped by the Courts of Florida. Pawley v. Pawley, Fla., 46 So.2d 464. We find but little, if any, conflict in the evidence on the point of the standard of living observed by the parties to this suit from the date of their marriage in 1932 until their separation in November, 1950. They lived in the lower apartment of the Daytona Beach property for approximately three years and rented the upstairs apartment for $65 per month. They lived frugal and thrifty lives, but this standard of living is characterized as "miserly". She testified (Tr. 139) that with the allowance of $10 per month on the part of her husband she "bought all personal things needed by her, including clothes, cosmetics and items of similar nature." The husband supplied her additionally with a home and food, and with this standard of living apparently she was satisfied or contented throughout her married life with the appellant.
The prerogative of a husband to fix or set the standard of living for himself and family, as enunciated in the Pawley case, was clearly in the mind of Judge Frederick when he entered his order dated January 20, 1951. This order held that the wife was not "left penniless" and "not without means or funds." She was then living in the downstairs apartment of their home and was the owner of the following property: $1,350 on savings account; $835 in Government bonds in a safety deposit box; three large dinner rings containing 18 large diamonds and numerous small ones having a value of from $5,000 to $6,000, all of the total approximate value of from $7,000 to $8,000. Judge Frederick denied the wife counsel fees and suit money but required the husband to pay her $30 per week. The second Judge, during Judge Frederick's illness, raised the weekly allowance to $40.
Other jurisdictions construing similar statutes to the one here involved are clearly set out in Schouler's Divorce Manual, pages 387-8, viz.:
"(a) Circumstances considered.  Generally speaking the amount of the alimony will depend upon the circumstances of each case including the age, health and social position of the parties, the financial condition of both, the source and amount of property, the earning capacity and income, the respective fault of the parties as appears by the divorce proceedings and the necessities of the wife and children.
"(b) Award not punitive.  The award of alimony should not be punitive. It it not intended to punish the husband for his misconduct. It has been said, however, that the misconduct of the husband may be taken into consideration in fixing the amount. Nevertheless, the main purpose of alimony is support. And the amount to be allowed for that purpose should be just and reasonable so far as it affects both parties.
"(c) Factors considered.  In determining the amount of the wife's support, her social standing and the standard of living to which she has been accustomed may be considered as well as *200 her station and condition in life. The courts, however, cannot enforce this rule where the resources and earnings of the husband are not sufficient for the purpose."
See Hutchinson v. Hutchinson, 102 Fla. 1123, 137 So.2d 5, and similar cases.
The record discloses that Samuel Kaufman was not in the State of Florida but at Toms River, New Jersey, and had been for several days, when the wife filed her suit in the Circuit Court of Volusia County, Florida, on November 16, 1950. It is true that he obtained counsel and filed an answer to the bill of complaint in the Circuit Court of Volusia County on the 14th day of December, 1950. Kaufman does not appear ever to have been in Florida after his wife instituted her suit for support and maintenance. It is not disputed that he was eighty years of age and subject to heart attacks and represented to the lower Court that he was not physically able to travel from Toms River, New Jersey, to Daytona Beach, Florida, for the purpose of giving his depositions, but he expressed a willingness so to do, if desired, at Toms River, New Jersey. It was the wife's contention that discovery depositions on the part of the husband were essential in order to make out her case. He further contended that if the rent money collected by his wife on the upstairs apartment had been accurately applied to the support money as allowed by the court, then he would not be in arrears thereon.
(1) The order of the Chancellor adjudging Samuel Kaufman in contempt of court for his failure to pay alimony and counsel fees according to the Court's decree; (2) the order striking from the files the answer of the appellant to the bill of complaint; (3) the entry of a decree pro confesso against Samuel Kaufman; (4) the order requiring the wife to proceed further ex parte in the cause; (5) the imposition of sentence on Samuel Kaufman for contempt; (6) the order commanding the arrest of Samuel Kaufman, were each confirmed, approved and ratified by the final decree appealed from. The Chancellor's ruling, supra, is bottomed on 30 F.S.A. Rule 30(d) of the Common Law Rules of Civil Procedure. It is as follows:
"(d) Failure of Party to Attend or Serve Answers. If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 26, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."
We are unable to agree with the able Chancellor's interpretation of the discovery deposition rule. The wife was asserting her claim for support and maintenance money. The husband was not asserting a claim against his wife but simply filed an answer to her claim. The wife, under such conditions and circumstances, is not entitled, as a matter of right, to an order requiring this appellant to travel from Toms River, New Jersey, to Daytona Beach, Florida, at great expense and inconvenience, in order to give his deposition so that the plaintiff-wife could prepare her case for trial. The Rule, supra, casts upon the wife in the case at bar the burden of taking the husband's testimony at Toms River, New Jersey. See Rule 30(a) of Civil Procedure; Surrency v. Winn & Lovett Grocery Co., 160 Fla. 294, 34 So.2d 564. It was error to strike from the record the answer of the defendant-appellant and in an ex parte proceeding enter the final decree challenged on this appeal.
The decree appealed from is reversed with directions for further proceedings not inconsistent with the views herein expressed.
TERRELL, THOMAS and MATHEWS, JJ., concur.
SEBRING, C.J., and TAYLOR, Associate Justice, dissent.
*201 HOBSON, J., not participating.
TAYLOR, Associate Justice (dissenting).
Being unable to agree with the opinion filed in the case, the writer would be content merely to note his dissent were it not for the importance of the principal question presented, which he considers vital to the proper operation of the rules relating to discovery.
Appellee brought suit against appellant for separate maintenance, alleging that appellant had left the State but had substantial funds on deposit in a local bank. The bank was made a party and an injunction issued restraining the bank from disbursing these funds. Later appellant appeared, filed his answer and sought a dissolution of the injunction. The Court first ordered all the money except $7,000 released and later released this $7,000, the appellant being ordered to pay temporary support, temporary attorney's fees and suit money.
Appellant's answer denied that appellee was without funds and applied for an order impounding a safety deposit box held in the name of appellee. This was done and an inventory of the contents of this box disclosed that the appellee had over $1,300 cash, some $800 in bonds and jewelry worth several thousand dollars. The Court then revoked so much of its prior order as provided for the payment by appellant of temporary attorney's fees and suit money and directed that these funds be returned to appellant which was done.
Appellee gave notice under Rule of the taking of Daytona Beach of appellant's depositions for discovery and evidence. Appellant did not appear, but filed objections setting up that he was a resident of Toms River, New Jersey, that he was approximately eighty years of age and that it would constitute an unreasonable hardship to require him to travel to Daytona Beach to be examined.
A hearing was held on these and other pleadings and the Court's order is in part as follows:
"It appearing that the Defendant was, at the commencement of this suit and still is, in Toms River, New Jersey, that in order to take the Defendant's deposition for discovery, which the Plaintiff is entitled to take, it will be necessary for the Plaintiff to arrange the taking of said deposition in Toms River, New Jersey, and arrangements be made for the expense thereof to be defrayed by the Defendant. Counsel for the Defendant having orally stated to the Court that the Defendant would come down to Daytona Beach, Florida, for the taking of testimony herein on the issues, and that he would be here within a period of two weeks; the Court being of the opinion that the Plaintiff is entitled to take said discovery proceedings prior to being required to taking testimony on the issues, and that said deposition in discovery should be taken at least five days prior to the Plaintiff being required, to take testimony on the issues, upon consideration thereof, the Court does hereby order and direct that the said Defendant, Samuel Kaufman, submit himself at Daytona Beach, Florida, for the taking of deposition on oral examination for discovery, within ten days from this date, in accordance with the notice heretofore given herein for the taking of said deposition in discovery proceedings, before Gail S. Lynch, and to notify counsel for the Plaintiff when the said Defendant will be available for said discovery deposition, at least 8 days prior thereto."
Two days later a stipulation was executed by Counsel for both parties specifying the date, hour and place at which these depositions would be taken.
But appellant did not appear. Appropriate motion for contempt citation was filed. Appellant replied to this motion with answer stating that "he has not felt well enough to travel to Florida." This answer was not verified nor supported by any evidence whatever. The Court conducted a hearing and found that the appellant was also in default in payments of temporary support as ordered by the Court. Appellant was adjudged in contempt of Court, but the Court further ordered:

*202 "that the imposition of sentence on the said Samuel Kaufman for his said contempt in connection with the taking of his deposition in said discovery proceedings be and the same is hereby withheld in order to give the Defendant, Samuel Kaufman, an opportunity to purge himself thereby by presenting himself at Chambers of Circuit Court in Daytona Beach, Florida, at 10:00 o'clock A.M. on June 28, 1952, for discovery proceedings and in default of said appearance to pay instanter to Messrs. Horn & Ossinsky, Counsel for Plaintiff, the costs and expenses of the Plaintiff and her Counsel in travelling by plane, and hotel, including expense of Notary Public and Court Reporter, for the taking of the Defendant's deposition in discovery in Toms River, New Jersey, which is hereby estimated to be not less than the sum of $500.00, the exact amount of said expense to be determined after the taking of said deposition, * * *"
Appellant did not appear or pay the sum specified to enable his depositions to be taken in Toms River, New Jersey. Thereafter the Court:
"Ordered, adjudged and decreed that said Samuel Kaufman be and he is hereby enjoined from taking any steps herein in this cause whatsoever until he has purged himself of his contempt of this Court; and that until the said Samuel Kaufman has purged himself of said contempt of this Court, the said Samuel Kaufman has no standing before this Court, and that the Answer of the Defendant, Samuel Kaufman, should be stricken and that a Decree Pro Confesso be entered against the Defendant, Samuel Kaufman, and it is, Further ordered, adjudged and decreed that the Answer of the Defendant heretofore filed herein be and the same is hereby stricken, and that a Decree Pro Confesso be and the same is hereby entered against the said Defendant, Samuel Kaufman, and that the Plaintiff be and she is hereby allowed to proceed ex parte herein provided that said Decree Pro Confesso be opened up by Defendant putting himself in good standing before the Court before Final Decree herein;"
Appellant did not see fit to purge himself of his contempt and testimony was duly taken before the Court resulting in a decree in favor of appellee awarding her $75 per week separate maintenance and further directing that appellee be permitted to occupy the first floor of a duplex apartment building in Daytona Beach occupied by the parties as their home before their separation. Appellee was allowed $4,000 attorney's fees.
Appellant has appealed and seeks reversal of the decree below on three grounds (1) that the Court erred in striking his answer and proceeding ex parte, (2) that the award for separate maintenance is excessive, (3) that the attorney's fees awarded are excessive.
The rule is clear:
"(d) Failure of Party to Attend or Serve Answers. If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 26, after proper service of such interrogatories, the Court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."
The Court had ample authority to enter the order complained of, striking appellant's answer, and unless it abused a sound judicial discretion in so doing we should affirm.
Ordinarily a defendant should not be required to travel any great distance in order to be examined by the plaintiff for discovery purposes when no affirmative defenses or counter claims are involved. The Courts should, in all cases, make such orders in this connection as will be fair and just to both parties. But when a wife who was brought to this State by a husband who abandons her here, seeks discovery from the husband, it is entirely proper for the Court, on sufficient showing of ability on the part of the *203 husband and necessity on the part of the wife to require the husband to either appear in Florida or pay the expenses necessary for plaintiff and her attorneys to take the deposition at his place of refuge.
Under the facts above outlined it would have been error to arbitrarily require that defendant travel to Daytona Beach to give evidence for plaintiff. Apparently the Court recognized this because its first order on the subject recites the necessity of arrangements for the taking of appellant's testimony in New Jersey. The appellant then, before the Court by his attorney, volunteered to come to Daytona Beach and submit to interrogation. This oral agreement was later confirmed by a written stipulation. When appellant failed to appear the Court again gave appellant the choice of appearing and being examined in Florida or paying the expense of the depositions being taken in New Jersey. He did neither. Even when the Court pursuant to Rule 30 struck appellant's answer, it gave him another chance to repent of his contempt and defend the action but he refused to avail himself of this opportunity. The fact that defendant "did not feel well enough" (assuming that this means he was physically unable) to travel to Florida may excuse his physical absence but does not excuse his failure to pay the expense of giving his depositions in New Jersey.
The entire record leads the writer to conclude that the appellant, who was safely beyond the personal processes of the Court of this State, appeared and submitted himself to the jurisdiction of the Court only because some $29,000 of his money had been reached by the processes of the Court and could have been permanently impounded to guarantee that he perform his legal duty to support his wife; that when the Court saw fit to release this fund so that he could remove it from the State he determined to ignore the orders and processes of the Courts of this State and thus take advantage of his physical absence from the Jurisdiction to avoid personal punishment for contempt.
It is difficult to perceive how the Court could have dealt more leniently with appellant and, at the same time could have maintained the authority and dignity of the Court. It did not order him to appear in Florida until appellant consented to such order as an alternative to paying the expense of giving his deposition in New Jersey. When he did not appear the Court again gave him the opportunity to pay such expenses as an alternative to coming to this State. Even when the appellant had clearly shown his contempt by refusing either to come to Florida or pay the expense of giving his deposition at the place of his choice, the Court acted with patience and full consideration of the appellant's rights in giving him the opportunity at any time before final decree to recognize his error and purge himself of his contempt.
To permit a party in default for failure to give depositions to participate in the future progress of this case in like manner as though he were not in default would emasculate the rule, invite disregard of Court orders and cause litigants, the bar and the public to lose respect for the Courts.
A different situation would have been presented had it appeared that the appellant was not financially able to pay the moneys found to be necessary for the taking of the depositions in New Jersey. But the record shows the appellant to be a man of substantial means. The action of the Court in striking appellant's answer was manifestly correct.
The award of $75 per week for separate maintenance in addition to the use of the home and maintenance of this apartment may be excessive but I cannot, from the evidence before us so hold in the light of the presumption favoring the correctness of the Chancellor's decision. This amount was fixed on ex parte hearing. A full inquiry might develop that a lesser amount would enable appellee to live in the manner in which she lived prior to the separation of the parties.
The law does not contemplate that a husband may so reduce the standard of living of his wife as to drive her from him and then use this standard to measure the support which the law requires of him. Neither does the law permit a woman, who has by mutual consent with her husband *204 established a standard of living satisfactory to both, to demand as separate maintenance money sufficient to maintain herself on a substantially more luxurious scale than that which she found satisfactory before the parties fell into disagreement. Her standard of living should be unchanged by the separation if the husband is able to provide for her adequately, giving due allowance to her earning capacity, if any, in appropriate cases.
Since the husband, in this case, was not heard in fixing the payments he should be permitted, at such time as he has paid up all arrears and, if required by the Court, has given security for future payments, to apply for a modification of the order fixing the amount of appellees separate maintenance without being bound by the order entered ex parte.
The allowance of attorney's fees for appellee's attorney is excessive.
Counsel representing both parties in the lower Court indulged in an unnecessary and unjustified amount of skirmishing over preliminary matters. Much of the early action revolves around the allegation of appellee's bill as to her destitute condition; appellant's application for an order for the examination of a safety deposit box of appellee, the opening of this box and discovery of assets of such value as to cause the Court to rescind its order directing appellant to pay temporary attorney's fees and suit money and requiring the return of moneys paid pursuant to such order. All this was unnecessary. It was due to the failure of appellee to disclose facts to her attorney or his failure to apprise the Court of facts disclosed. In neither event should appellant be charged with attorney's fees incident to such proceedings. The record before us is 164 pages long, of which only 38 pages were required to record the actual testimony which as above stated, was taken ex parte.
As above stated neither side is free from fault in the making of this record. However, a defendant should not be charged with unnecessary work undertaken by plaintiff's attorneys or work occasioned by plaintiff's failure fully to disclose the facts to the Court. For the work properly done on behalf of appellee in the Circuit Court a fee of $2,000 is ample and for work in this Court $500 should suffice.
It is only fair to point out that counsel representing appellant in this Court did not handle his case in the Circuit Court.
SEBRING, C.J., concurs.

On Rehearing.
TAYLOR, Associate Justice.
Appellee brought suit against appellant for separate maintenance, alleging that appellant had left the State but had substantial funds on deposit in a local bank. The bank was made a party and an injunction issued restraining the bank from disbursing these funds. Appellant appeared, filed his answer and sought a dissolution of the injunction. The Court first ordered all the money except $7,000 released and later released this $7,000, the appellant being ordered to pay temporary support, temporary attorney's fees and suit money.
Appellant's answer denied that appellee was without funds and prayed for an order impounding a safety deposit box held in the name of appellee. This was done and an inventory of the contents of this box disclosed that the appellee had over $1,300 cash, some $800 in bonds and jewelry worth several thousand dollars. The Court then revoked so much of its prior order as provided for the payment by appellant of temporary attorney's fees and suit money and directed that these funds be returned to appellant which was done.
Appellee gave notice under Rule 30 of the taking in Daytona Beach of appellant's depositions for discovery and evidence. Appellant did not appear, but filed objections setting up that he was a resident of Toms River, New Jersey, that he was approximately eighty years of age and that it would constitute an unreasonable hardship to require him to travel to Daytona Beach to be examined.
A hearing was held on these and other pleadings and the Court's order is in part as follows:
"It appearing that the Defendant was, at the commencement of this suit *205 and still is, in Toms River, New Jersey, that in order to take the Defendant's deposition for discovery, which the Plaintiff is entitled to take, it will be necessary for the Plaintiff to arrange the taking of said deposition in Toms River, New Jersey, and arrangements be made for the expense thereof to be defrayed by the Defendant. Counsel for the Defendant having orally stated to the Court that the Defendant would come down to Daytona Beach, Florida, for the taking of testimony herein on the issues, and that he would be here within a period of two weeks; the Court being of the opinion that the Plaintiff is entitled to take said discovery proceedings prior to being required to taking testimony on the issues, and that said deposition in discovery should be taken at least five days prior to the Plaintiff being required, to take testimony on the issues, upon consideration thereof, the Court does hereby order and direct that the said Defendant, Samuel Kaufman, submit himself at Daytona Beach, Florida, for the taking of deposition on oral examination for discovery, within ten days from this date, in accordance with the notice heretofore given herein for the taking of said deposition in discovery proceedings, before Gail S. Lynch, and to notify counsel for the Plaintiff when the said Defendant will be available for said discovery deposition, at least 8 days prior thereto."
Two days later a stipulation was executed by Counsel for both parties specifying the date, hour and place at which these depositions would be taken.
But appellant did not appear. Appropriate motion for contempt citation was filed. Appellant replied to this motion with answer stating that "he has not felt well enough to travel to Florida." This answer was not verified nor supported by any evidence whatever. The Court conducted a hearing and found that the appellant was also in default in payments of temporary support as ordered by the Court. Appellant was adjudged in contempt of Court, but the Court further ordered:
"that the imposition of sentence on the said Samuel Kaufman for his said contempt in connection with the taking of his deposition in said discovery proceedings be and the same is hereby withheld in order to give the Defendant, Samuel Kaufman, an opportunity to purge himself thereby by presenting himself at Chambers of Circuit Court in Daytona Beach, Florida, at 10:00 o'clock A.M. on June 28, 1952, for discovery proceedings and in default of said appearance to pay instanter to Messrs. Horn & Ossinsky, Counsel for Plaintiff, the costs and expenses of the Plaintiff and her Counsel in travelling by plane, and hotel, including expense of Notary Public and Court Reporter, for the taking of the Defendant's deposition in discovery in Toms River, New Jersey, which is hereby estimated to be not less than the sum of $500.00, the exact amount of said expense to be determined after the taking of said deposition, * * *."
Appellant did not appear or pay the sum specified to enable his depositions to be taken in Toms River, New Jersey. Thereafter the Court:
"Ordered, adjudged and decreed that said Samuel Kaufman be and he is hereby enjoined from taking any steps herein in this cause whatsoever until he has purged himself of his contempt of this Court; and that until the said Samuel Kaufman has purged himself of said contempt of this Court, the said Samuel Kaufman has no standing before this Court, and that the Answer of the Defendant, Samuel Kaufman, should be striken and that a Decree Pro Confesso be entered against the Defendant, Samuel Kaufman, and it is, Further ordered, adjudged and decreed that the Answer of the Defendant heretofore filed herein be and the same is hereby stricken, and that a Decree Pro Confesso be and the same is hereby entered against the said Defendant, Samuel Kaufman, and that the Plaintiff be and she is hereby allowed to proceed ex parte herein provided that said Decree Pro Confesso be opened up by Defendant *206 putting himself in good standing before the Court before Final Decree herein".
Appellant did not see fit to purge himself of his contempt and testimony was duly taken before the Court resulting in a decree in favor of appellee awarding her $75 per week separate maintenance and further directing that appellee be permitted to occupy the first floor of a duplex apartment building in Daytona Beach occupied by the parties as their home before their separation. Appellee was allowed $4,000 attorneys' fees.
Appellant has appealed and seeks reversal of the decree below on three grounds (1) that the Court erred in striking his answer and proceeding ex parte, (2) that the award for separate maintenance is excessive, (3) that the attorney's fees awarded are excessive.
The rule is clear:
"(d) Failure of Party to Attend or Serve Answers. If a party or an officer or managing agent of a party willfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 26, after proper service of such interrogatories, the Court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."
The Court had ample authority to enter the order complained of, striking appellant's answer, and unless it abused a sound judicial discretion in so doing we should affirm.
Ordinarily a defendant should not be required to travel any great distance in order to be examined by the plaintiff for discovery purposes when no affirmative defenses or counter claims are involved. The Courts should, in all cases, make such orders in this connection as will be fair and just to both parties. But when a wife who was brought to this State by a husband who abandons her here, seeks discovery from the husband, it is entirely proper for the Court, on sufficient showing of ability on the part of the husband either to appear in Florida or to pay the expenses necessary for plaintiff and her attorneys to take the deposition at his place of refuge.
Under the facts above outlined it would have been error to arbitrarily require that defendant travel to Daytona Beach to give evidence for plaintiff. Apparently the Court recognized this because its first order on the subject recites the necessity of arrangements for the taking of appellant's testimony in New Jersey. The appellant then, before the Court by his attorney, volunteered to come to Daytona Beach and submit to interrogation. This oral agreement was later confirmed by a written stipulation. When appellant failed to appear the Court again gave appellant the choice of appearing and being examined in Florida or paying the expense of the depositions being taken in New Jersey. He did neither. Even when the Court pursuant to Rule 30 struck appellant's answer, it gave him another chance to repent of his contempt and defend the action but he refused to avail himself of this opportunity. The fact that defendant "did not feel well enough" (assuming that this means he was physically unable) to travel to Florida may excuse his physical absence but does not excuse his failure to pay the expense of giving his depositions in New Jersey.
The entire record leads us to conclude that the appellant, who was safely beyond the personal processes of the Court of this State, appeared and submitted himself to the jurisdiction of the Court only because some $29,000 of his money had been reached by the processes of the Court and could have been permanently impounded to guarantee that he perform his legal duty to support his wife; that when the Court saw fit to release this fund so that he could remove it from the State he determined to ignore the orders and processes of the Courts of this State and thus take advantage of his physical absence from the Jurisdiction to avoid personal punishment for contempt.
It is difficult to perceive how the Court could have dealt more leniently with appellant *207 and, at the same time, could have maintained the authority and dignity of the Court. It did not order him to appear in Florida until appellant consented to such order as an alternative to paying the expense of giving his deposition in New Jersey. When he did not appear the Court again gave him the opportunity to pay such expenses as an alternative to coming to this State. Even when the appellant had clearly shown his contempt by refusing either to come to Florida or to pay the expense of giving his deposition at the place of his choice, the Court acted with patience and full consideration of the appellant's rights in giving him the opportunity at any time before final decree to recognize his error and purge himself of his contempt.
To permit a party in default for failure to give depositions to participate in the future progress of this case in like manner as though he were not in default would emasculate the rule, invite disregard of Court orders and cause litigants, the bar and the public to lose respect for the Courts.
A different situation would have been presented had it appeared that the appellant was not financially able to pay the moneys found to be necessary for the taking of the depositions in New Jersey. But the record shows the appellant to be a man of substantial means. The action of the Court in striking appellant's answer was manifestly correct.
The award of $75 per week for separate maintenance in addition to the use of the home and maintenance of this apartment may be excessive but we cannot, from the evidence before us, so hold in the light of the presumption favoring the correctness of the Chancellor's decision. This amount was fixed on ex parte hearing. A full inquiry might develop that a lesser amount would enable appellee to live in the manner in which she lived prior to the separation of the parties.
The law does not contemplate that a husband may so reduce the standard of living of his wife as to drive her from him and then use this standard to measure the support which the law requires of him. Neither does the law permit a woman, who has by mutual consent with her husband established a standard of living satisfactory to both, to demand as separate maintenance money sufficient to maintain herself on a substantially more luxurious scale than that which she found satisfactory before the parties fell into disagreement. Her standard of living should be unchanged by the separation, if the husband is able to provide for her adequately, giving due allowance to her earning capacity, if any, in appropriate cases.
Since the husband, in this case, was not heard in fixing the payments he should be permitted, at such time as he has complied with all the orders of the Court, to apply for a modification of the order fixing the amount of appellees separate maintenance thereafter without being bound by the order entered ex parte.
The allowance of attorney's fees for appellee's attorney is excessive.
Counsel representing both parties in the lower Court indulged in an unnecessary and unjustified amount of skirmishing over preliminary matters. Much of the early action revolves around the allegation of appellee's bill as to her destitute condition; appellant's application for an order for the examination of a safety deposit box of appellee, the opening of this box and discovery of assets of such value as to cause the Court to rescind its order directing appellant to pay temporary attorney's fees and suit money and requiring the return of moneys paid pursuant to such order. All this was unnecessary. It was due to failure of appellee to disclose facts to her attorney or his failure to apprise the Court of facts disclosed. In neither event should appellant be charged with attorney's fees incident to such proceedings. The record before us is 164 pages long, of which only 38 pages were required to record the actual testimony which, as above stated, was taken ex parte.
The decree appealed from is affirmed insofar as it grants appellee separate maintenance and, unless and until modified as herein provided, as to the amount of such *208 separate maintenance. The decree is reversed as to the amount of attorney's fees awarded appellee.
Upon the going down of our mandate, appellee may, upon ten days notice apply to the chancellor for an order fixing attorney's fees for appellees attorneys for services rendered in the Circuit Court. At such hearing the appellant, if he has paid all separate maintenance then accrued under the decree appealed from and the attorney's fees herein awarded for services in this Court, may participate and be heard, otherwise the hearing shall be ex parte.
At such time as appellant has paid all sums accrued under the decrees of the circuit court and has paid the attorneys fees herein awarded, he may apply to the circuit court for a hearing upon the reasonableness of the support allowance fixed by the circuit court. At such hearing he may present any evidence pertinent to those issues and may require the presence, for cross examination, of the appellee and any witnesses produced by her at the original hearing and then available. Appellee shall have the right to offer further evidence on these issues. Upon the evidence heretofore taken and the evidence taken at such hearing the circuit court shall fix the amount of support thereafter to be paid appellee by appellant and attorneys fees for services rendered at such hearing without reference to the specific amounts previously fixed. Should the chancellor at such hearing find the previous allowances for support to be excessive, he may take the extent of such excess into account in fixing future payments. Should the chancellor deem it appropriate under all the circumstances then appearing he may require security for future payments pursuant to the applicable statute.
Appellee is allowed $500 for the services of her attorneys in this court, to be paid by Appellant.
Reversed in part, affirmed in part and remanded for further proceedings in accordance with this opinion.
HOBSON, C.J., and TERRELL, SEBRING, MATHEWS and DREW, JJ., concur.
THOMAS, J., adheres to original opinion.