359 So.2d 494 (1978)
Elizabeth K. McCLOSKEY, Appellant,
v.
Thomas D. McCLOSKEY, Appellee.
No. 76-826.
District Court of Appeal of Florida, Fourth District.
May 16, 1978.
Rehearing Denied June 28, 1978.
*495 Edwin P. Rome and Norman Perlberger, of Blank, Rome, Klaus & Comisky, Philadelphia, Pa., and William B. Killian and Joseph P. Klock, Jr., of Steel, Hector & Davis, Miami, for appellant.
Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, and Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellee.
LETTS, Judge.
The wife here appeals a trial court's award of $4,500 per month in permanent periodic alimony. We reverse.
This case involves a 30 year marriage, 5 children, a wife never employed and forever unemployable among other reasons, because of a "hysterical personality subject to recurrent episodes of psychotic depressions." Her husband had an admitted net worth of over 18 million dollars in June 1974.[1] He has interests in over fifty business enterprises, controls the main family corporation and serves as its chief executive officer receiving generous expense allowances.
*496 To borrow a phrase from a recent case, "the style of living which these parties accustomed themselves to, boggles the mind," Storer v. Storer, 353 So.2d 152 (Fla. 3rd DCA 1977). Living in a $750,000 home requiring an annual maintenance cost of $58,000, provides but a backdrop to set the stage for a retinue of servants, chauffeured limousines, chartered planes, yachts, memberships in fabulous clubs, inter-continental travel and a weekly flower bill of $200. Added to this, we find that the wife, at times, received as much as $4,000 per month "walking around money," a clothing allowance of $25,000 per year and charge accounts "everywhere." She often hosted lavish, catered parties for 250 people, came to a Palm Beach apartment in the winter and enjoyed yet a third home for summer use, on the ocean in Stone Harbor, New Jersey.
During 1973 and 1974, the husband deposited over 2 million dollars of non-borrowed money in his checking account and his largest company, of which he is President, made $339,000 in charitable contributions alone. In addition, an $800,000 pledge was made to Notre Dame in 1974 (payable at the rate of $80,000 per year). Mr. McCloskey also owns a professional soccer team.
By contrast, the wife has virtually no income and, a net worth consisting of jewelry worth somewhere between $2-300,000, plus $150,000 worth of stock in a loan company, from which she gets no income. She also has a one-third share, in the husband's main corporation, valued at $1.6 million. This latter holding was given to the wife, not by the husband, but by her now deceased father-in-law. However, she receives no income from it, cannot sell or mortgage it, and it is controlled by a voting trust.
We begin by holding that we can find no abuse of discretion in the chancellor's finding that the Husband is a resident of Florida. There is a plethora of conflicting evidence in the record and we would simply be substituting our judgment for that of the trier of the fact which would be inappropriate. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).
We hold, however, that the trial judge erred when he included, in his consideration of the wife's net worth, a possible future inheritance. See Traylor v. Traylor, 214 So.2d 15 (Fla. 1st DCA 1968). Said inheritance is supposed to come to her by will when an elderly aunt dies, but the wife may die first, wills can be re-written, or the aunt may make an inter vivos disposition of the stock. In the event the wife does eventually inherit this asset, and if it is marketable, or income producing, a petition to modify the alimony, because of significantly changed circumstances, may be filed in accordance with the precepts of Wilson v. Wilson, 279 So.2d 893 (Fla. 4th DCA 1973).
We further hold it was not an abuse of discretion for the trial judge to refuse the wife's attempts to depose her husband on the question of his extra marital adventures. We recognize that in Pro v. Pro, 300 So.2d 288 (Fla. 4th DCA 1974), we held that evidence of adultery is admissible when the amount of alimony to be given may be at issue. It is true that the sums of money a husband spends on the "other woman" may demonstrate financial capabilities that he pretends he does not have. However, in this case, the husband is as rich as Croesus and a veritable harem would have no effect on his ability to pay, or his wife's concomitant need. See also Linda v. Linda, 352 So.2d 1208 (Fla. 4th DCA 1977).
The permanent alimony award in this case totals $4,500 a month or $54,000 per annum. Pursuant to the final judgment, the permanent alimony starts at $3,500 a month, but as a form of rehabilitative alimony the wife is also given 5 years exclusive possession of the $750,000 house in Philadelphia.[1a] It is uncontroverted that this house requires $58,000 a year to maintain it, and this obligation is placed on the husband. As a result, the total support payments for the first 5 years are $100,000 *497 per year, plus child support and payment of 75% of medical bills. At the end of 5 years the wife must give up the house and find her own living quarters at which time the $3,500 permanent award is increased to $4,500 per month to enable her to pay for alternative accommodations. There is no award of lump sum alimony.
Alimony is traditionally predicated on three criteria: (1) the ability of the husband to pay it, (2) the needs of the wife compared to reasonable expectations from her own income, and (3) the standard of living enjoyed by the wife during marriage. Caracristi v. Caracristi, 324 So.2d 634 (Fla. 2nd DCA 1976).
We can easily dispose of the first two criteria in this case. There can be no doubt of the husband's ability to pay very substantial alimony, and we take note that it is deductible to him on his income tax return. Equally, there is little doubt that the wife has very substantial needs. She is unemployable, old and has virtually no income of her own.
As to the third criteria, the wife, up until the time of the divorce, enjoyed a standard of living comparable only to an oil rich sheik. By contrast, she is now expected to live on $54,000 permanent alimony a year on which she will pay at least $15,000 in income tax.[2] Such a sum, deductible by the husband, will hardly affect his style of living one iota. On the other hand, the same figure, taxable to the wife will change her former life style  most drastically. See McAllister v. McAllister, 345 So.2d 352, 355 (Fla. 4th DCA 1977). The problem, of course, is that $54,000 per year is a vast sum of money by the standards of all Americans with the exception of a favored few. Accordingly, it is not only hard to be sympathetic to the wife, but also difficult to find that a trial judge abused his discretion when the award he made happens to be $15,000 greater than his own salary! Nonetheless, we are of the opinion that the award of permanent alimony in this case was too small under the circumstances. [See Firestone v. Firestone, 263 So.2d 223 (Fla. 1972) in which the court found an award of $3,000 per month inadequate from a husband with an already vested, or certain to become vested, net worth in excess of 5 million dollars].
As we did in the McAllister case supra, we point to the fact that the court here, in effect, additionally made an award of rehabilitative alimony in the sum of $58,000 per annum (the cost of maintaining the house in which the wife is to live for 5 years). We are of the opinion that such an award of rehabilitative alimony was in error. There was not the slightest reason to suppose that the wife's needs would be any different 5 years later than they were on the day of the final hearing. Accordingly, if she needs the equivalent of $100,000 now, she would also need it 5 years hence. As we said in West v. West, 345 So.2d 756 (Fla. 4th DCA 1977):
Our reading of the record in this cause leads us to conclude that the trial court erred in awarding rehabilitative alimony to the 57 year old wife who had not worked during the 35 year marriage between the parties. There is no evidence in the record which demonstrates the potential or actual capacity for self support by the wife. On authority of Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974); and Yohem v. Yohem, 324 So.2d 160 (Fla. 4th DCA 1975), we reverse the final judgment insofar as the award of rehabilitative alimony is concerned and remand the cause with directions that the trial court enter an award for permanent alimony in such amount as the court shall determine to be appropriate based upon the current needs of the wife and the husband's ability to pay.
In summation, this is a marriage of long duration, the wife has borne 5 children, the husband has infinite resources from which to pay alimony, the wife needs major support *498 to come even close to maintaining her former standard of living, she is not well, cannot seek employment and finally the award below has caused the wife to suffer a shocking change from prosperity to misfortune while the life style of the husband can continue as before.
Accordingly, we reverse the final judgment, in part, and remand this case so that the trial judge may make a more suitable award of permanent alimony. While so doing, the trial court should receive evidence as to net worth by way of a credible audit. The record is replete with evidence that Mr. McCloskey engages in many forms of, no doubt, legal tax avoidance. By so doing, he ends up with a taxable income that is most surprising in its modesty. However, legal tax avoidance and alimony avoidance involve different criteria. Ability to pay alimony is the stated test in a host of cases (Firestone, supra), and it is absurd to suppose that a fabulously rich man could avoid support payments by simply manipulating his assets so as to remove them from his personal statement and/or invest them in such a way as to show a de minimus income.
All other points on appeal are found to be without merit and in all other respects the final judgment is affirmed.
REVERSED AND REMANDED.
CROSS, J., concurs.
MOORE, J., concurring specially.
MOORE, Judge, concurring specially:
I agree in the result that this cause should be remanded for further consideration by the learned trial judge of permanent alimony consistent with the evidence adduced.
NOTES
[1] This net worth as of December, 1975, had apparently shrunk to 9.3 million dollars due to the nationwide real estate slump. These figures do not include values of tax free bonds and executive perquisites for which information was not available.
[1a] There was a 15 year old child at the time of trial who would live with the mother so that the 5 year tenancy in part provided a roof over the child's head.
[2] The rate for unmarried individuals on $54,000 of taxable income would be $21,300, however, we assume generous deductions to reduce the taxable income to $42,000 to reach the $15,000 tax.