HURLEY, Judge.
Appellant/former-wife appeals an order terminating alimony. Since the testimony indisputably establishes that the former-wife continues to need alimony and that her former-husband retains sufficient assets to meet her needs, we reverse the order of termination.
Robert and Virginia Padrick were divorced in 1970 after nineteen years of marriage. The final judgment of dissolution incorporated a stipulated agreement that Mr. Patrick pay permanent alimony in the sum of $550.00 per month. In mid-1972, however, Mr. Padrick ceased making regular alimony payments and this caused Mrs. Padrick to expend funds which she had received from the sale of the marital home. As an additional consequence of Mr. Padrick’s cessation of alimony, appellant sought and obtained a judgment for arrearages in the sum of $63,429.00.
In 1978, Mr. Padrick filed a petition to modify, requesting that alimony be eliminated. The testimony offered in support of his petition revealed that in 1970, at the time of the divorce, his salary was $750.00 per month. In 1978, at the time of the modification hearing, his salary had risen to approximately $1,200.00 per month. He and his second wife are residing in a home which Mr. Padrick inherited after the divorce and which, with improvements, has a fair market value of $250,000.00. The following table reflects Mr. Padrick’s annual salary together with valuation sums which he listed in various statements:
Year Salary Real Estate Holdings Net Worth
1972 $418,000 $327,830
1973 $15,000 $359,900 $459,111
1974 $15,600 $567,000 $654,000
1975 $12,249 $731,000 $709,000
1976 $19,418
1977 $40,000 $624,000 $554,000
1978 $17,046* $ 39,789
On the negative financial side, Mr. Pa-drick testified that he had suffered business reverses and was severely in debt. Indeed, he stated that he was incurring a weekly net loss of $700.33. After recapitulating the former-husband’s financial situation, the trial court offered this evaluation:
[T]he Petitioner (former-husband) showed that the principal source of his livelihood is as a real estate salesman and that as such, it is absolutely essential for a real estate salesman to have a proper automo *393 bile, good clothing, be able to properly entertain clients and customers and socialize in the proper circles in aid of his business. Thus, the Petitioner would naturally incur greater expense than one not so employed.
Turning now to the former-wife’s situation, we find that she was last employed during the early days of the marriage; thereafter, she worked as a mother and homemaker. The only testimony as to her health and job skills, came from her former-husband:
Q. Did you have a chance to talk with her personally outside of the courtroom, I’m talking about?
A. Yes, sir, in the hall.
Q. How was her health?
A. She said it was good.
Q. Of your own knowledge, does Virginia have any past work experience?
A. Yes, sir, when we married in Chapel Hill she was employed by the University as a secretary. She previously was the secretary for a senator.
Q. Is that a United States Senator?
A. Yes.
Q. Was she able to type?
A. Yes, sir.
Q. What kind of work did she do for the University of North Carolina?
A. Secretarial.
Q. Is her hand or anything — her hands or arms afflicted with arthritis, to your knowledge?
A. Not to my knowledge. (Tr. 25).
As part of the divorce settlement, the former-wife received the marital home. She realized $30,000 from its sale. However, since appellee ceased making regular alimony payments in mid-1972, appellant was required to expend all but $2,000 of her savings to support herself. Today, her only source of income is approximately $400.00 per month which she receives from her mother’s estate and which is due to terminate at some point in the future. The trial court characterized the former-wife’s situation in this manner:
Virginia S. Padrick, is not gainfully employed though evidence showed that at the date of her marriage to Petitioner, she was a capable secretary.... [I]f the Wife worked and provided income for herself, her needs would be commensurately lower.... [T]he Wife has not done her full part and could have by becoming gainfully employed. In this case, the evidence may be interpreted to show that the Respondent (former-wife) was in a better financial position than the Petitioner, in that, the Respondent is without debt and has relatively low expenses and still has approximately $2,000.00 in savings. In addition, she is seeking a judgment for arrearage in alimony and child support, and such sums are by law held by the courts to be vested, and which will thus increase her net worth by the amount of such arrearage, as determined by this Court in a separate proceeding.
In summary then, the trial court terminated permanent alimony on the finding that although the former-husband has increased his earnings and lives comfortably, he is saddled with substantial debts. On the other hand, the former wife, though unemployed for the last twenty-seven years, is free from debt, has $2,000 in savings and has a “vested judgment” against the former-husband for $63,492.00. Thus, the trial court found that there had been a substantial change in circumstances sufficient to justify termination of alimony. We respectfully disagree.
The law on modification of alimony is simple and well understood. “The necessary prerequisite for the modification of alimony... is a showing of substantial change of circumstances, including financial circumstances, of one or both of the parties.” Meltzer v. Meltzer, 356 So.2d 1263, 1265 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 460 (Fla.1979); see also Ashburn v. Ashburn, 350 So.2d 1158 (Fla. 2d DCA 1977); Taplin v. Taplin, 341 So.2d 1064 (Fla. 3d DCA 1977). We are cognizant that with respect to alimony, the designation “ ‘permanent’ is not necessarily synonymous with *394 ‘forever’ ”, Ruhnau v. Ruhnau, 299 So.2d 61, 65 (Fla. 1st DCA 1974), and that ultimately, the determination to grant or deny modification of alimony is a matter entrusted to the sound discretion of the trial court. Feldman v. Feldman, 317 So.2d 136 (Fla. 3d DCA 1975).
Considering these principles with the facts in the case at bar, we are compelled to conclude that the trial court abused its discretion by terminating all alimony. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). The record is silent on whether the former-wife currently has employable skills and whether there exists a market for those skills. Absent such proof, the suggestion that she has “not done her full part,” or that she has the capacity to become “gainfully employed” is sheer speculation; to penalize her without such proof is plainly error. Furthermore, it is also erroneous to credit her with a judgment or future expectancy which has not been realized. Cf. McCloskey v. McCloskey, 359 So.2d 494 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla.1979).
Clearly, a substantial change in circumstances on the part of one of the parties can be sufficient to justify a modification of alimony. Meltzer v. Meltzer, supra. Nonetheless, we hold that under the facts of this case, the former-husband’s indebtedness does not constitute a substantial change so as to permit the termination of all alimony. Even with his debts and the inexplicable drop in net worth from $554,000 in 1977 to $39,789 in 1978, appellee is better off today than he was at the time of his divorce. Despite his claim of a $700.33 weekly deficit, he is far from destitute. He resides in a quarter of a million dollar home and as noted by the trial court, appellee drives “a proper automobile, [has] good clothing,. .. [is] able to properly entertain clients and customers and socialize in the proper circles .... ” Irrespective of whether one characterizes this life-style as a blatant example of “keeping-up-with-the-Joneses” which appellee can ill afford, or, as “necessary business expenses,” one thing is certain: it cannot be used to rationalize the complete abandonment of his legitimate responsibilities to his former-wife. She has survived thus far on a frugal existence with virtually no aid from her former-spouse; given the facts of this case she is legally entitled to continued support. Accordingly, the provision terminating alimony is reversed.
BERANEK, J., concurs.
MOORE, J., concurs with opinion.

 Monies earned from January through November, 1978.