BARKDULL, Judge.
The appellant, former husband, Harry, appeals an order entered on rule to show cause and various motions for modification, and the former wife, Susan, takes a cross-appeal from that same order. The husband also seeks reversal of an order on costs and fees.
After an 11-year marriage, the parties were divorced in 1974. This appeal arises out of post-decretal motions and petitions for modification.
The divorce decree incorporated a settlement agreement which provides in part:
(4) Additional Support for Wife and Children The husband shall pay to the wife as additional support .. . 32% of any net income after taxes which he receives in excess of $13,000.
The husband’s income was defined as follows:
*341 For the purpose of this agreement, the husband’s income shall be interpreted to mean that amount which is attributable to him as fees from his medical practice or any other income after taxes have been deducted, but after paying his office expenses, or his pro rata share thereof in the event he does not practice alone.
In finding Harry in contempt for failure to pay additional support, the trial court adopted the figures compiled by Susan’s witness, a CPA who analyzed the husband’s books and records. This CPA testified that the husband has improperly deducted certain items as office expenses, such as $4,500 for his Porsche, $1,500 alimony payments, the profit on the sale of his home which was reinvested in another home, etc. Harry points out that the approach adopted by the judge prevents him from deducting as office expenses lease payments on office equipment, advertising, loan payments on office improvements, and interest on loans to finance equipment. In any event, the court found that Harry had about $33,000 of income subject to the “additional support” formula, that the amount of additional support for 1978 was $10,270.39, and that the husband had paid $2,387 thereon leaving a deficit of $7,883.39.
After the divorce, Susan worked off and on as a fashion sales representative in New York from 1974 to June 1977, but she developed severe depression problems, manifested by obesity and suicidal tendencies. In May 1977 she began seeing a psychologist, Dr. Snyder, who found her to be hysterical, suicidal, and in need of more help. He referred her to Dr. Salkin, a psychiatrist who treated her until she moved to Florida in 1978. Both those doctors opined that an emergency situation existed and that psychiatric intervention was necessary.
Upon moving to Florida, Susan began seeing Dr. Leibeskind who ultimately referred her to Duke’s weight program. By the time she went to Duke where she received psychiatric care from Dr. Pauk, her obesity had begun to have physical ramifications such as abnormal sugar metabolism, decreased kidney function, etc., Dr. Liebes-kind testified that Susan was horribly depressed and that her treatment was necessary. Dr. Pauk testified that the care at Duke could in “no way be construed to be elective in nature.”
According to the evidence, Harry was consulted about the psychiatric care, that Dr. Salkin talked directly with Harry, that he was advised in writing about the Duke program. She sought sanctions against him for failure to pay her medical bills in accordance with the following provision of the Settlement Agreement:
(9) Medical Insurance * * * The husband further agrees to pay all elective medical, dental and psychiatric bills not covered by said insurance, provided that any treatment not of an emergency nature, will only be secured after consulting with the Husband (HARRY) but he shall not unreasonably withhold his consent.
The trial court specifically found that “All of the psychiatric services received by Susan were either of an ‘emergency nature’ or necessary and Harry ... had and still has the financial ability to pay therefor and his failure to do so was contemptuous.”
Susan claims that she was unable to continue working in 1977 due to her mental health but when asked why she cannot work now, she stated “I don’t know.” Her doctors testified that working could be beneficial to her but that she would have to make the decision about returning to the work force. In connection with Susan’s claim for increased alimony, the lower court stated that, “while it is clear that there has been a substantial and meaningful change in the financial circumstances of both parties ... HARRY’S income and ability to pay having increased dramatically and SUSAN’S needs having also greatly increased,” the court determined that the additional support clause of the agreement was geared to provide for the increase in income since the agreement did not otherwise provide for modification and that Susan’s motion for modification must, therefore, be denied.
*342 The appellant contends it was error to hold him liable for the psychiatrist’s bills when there was no showing that besides the immediate situation in June 1977 that the care was rendered on an emergency basis or with his consent.
Appellant also contends the trial court erred in adjudicating him in contempt with respect to the additional support of 1978 because the trial court erred in the allowance of business expenses.
Harry also seeks review of an award of attorney’s fee of $50,000.00 contending that the fee was excessive.
Susan has cross-appealed contending that the trial court erred in denying her motion for modification to increase the amount of support.
We find no error in the award of the medical expenses. The record supports this award either on the theory that they were caused by an emergency or that consent to this expense was unreasonably withheld by Harry. Firestone v. Firestone, 263 So.2d 223 (Fla.1972); Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA 1980); Goodman v. Goodman, 204 So.2d 21 (Fla. 4th DCA 1967).
The final judgment limited the deductions that Harry, as a doctor, could make, in determining his “net income” which would be subject to the 32% provisions of the contract to the following:
A realistic interpretation of “office expenses” is reasonable salaries for supporting office personnel, reasonable office rent, office related telephone expenses, office supplies and office equipment rental. Loans and capital investments for real or personal property (including equipment purchases, or other assets subject to depreciation or appreciation) are not considered as an “office expense”, as so defined. The Agreement does not and cannot reasonably be interpreted to provide that SUSAN should pay proportionately or otherwise for HARRY’S automobiles, satisfaction of his loans, payments toward his purchase of land, buildings or equipment nor for his personal expenses whether or not he uses his professional association as a conduit.
We think this limitation is too narrow and the trial court should have permitted the doctor to deduct from his gross, professional fee income the expenses that were reasonable and necessarily incurred in enabling him to earn these fees such as, but not limited to: capital expenses for necessary medical equipment, their finance payments, continuing education costs, automobile expenses, costs of obtaining office space for his professional office or medical facility, (free-hold or lease-hold) in other words, those costs which are normal expenses that are incurred in a medical profession as recognized by the Internal Revenue Service of the United States Government.
Finding error in this respect the order awarding additional amounts for the year 1978 is reversed and this matter will be returned to the trial court to reconsider the “net income” in accordance with the view above expressed. Because of this error we also reverse the order denying the motion for modification. The trial court denied this motion in part because the contract provision provided for the increase to Susan, if Harry’s income increased under the contract. This provision ■should not absolutely control the consideration of the motion to modify, but, should only be a factor.
Because the benefits awarded to Susan will be reduced by a redetermination of the “net income” of Harry’s, subject to the 32% provision, we also reverse the award of attorney’s fees and return this subject matter to the trial court for reassessment in light of the reduction in benefits obtained by the attorney for his client.[1]
Therefore, the order under review is reversed as to the determination of the amount of Harry’s “net income” for the year 1978, as to the denial of Susan’s motion to modify and as to the award of *343 attorney’s fees. In all other respects it is affirmed. The matter is returned to the trial court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded with directions.

. We award the appellee attorney’s fees for service of her counsel in this court, but, return the matter to the trial court to fix the amount of said fees after the taking of evidence as to their value.