263 So.2d 223 (1972)
Mary Alice FIRESTONE, Petitioner,
v.
Russell A. FIRESTONE, Respondent.
No. 41470.
Supreme Court of Florida.
April 12, 1972.
Rehearing Denied June 29, 1972.
*224 Joseph D. Farish, Jr., of Farish & Farish, West Palm Beach, and Fuller Warren, Miami, for petitioner.
John R. Farrell, and Gerald T. Wetherington, of Farrell & Wetherington, Miami, for respondent.
*225 PER CURIAM.
This cause is before this Court on petition for writ of certiorari to review a decision of the Fourth District Court of Appeal, reported at 249 So.2d 719, which affirmed a judgment entered by the Circuit Court of Palm Beach County.
We have jurisdiction by virtue of conflict with Diem v. Diem, 1940, 141 Fla. 260, 193 So. 65, Article V, Section 4 (Florida Constitution, F.S.A.) and Rule 4.5(c), F.A.R., 32 F.S.A.
Petitioner-wife and respondent-husband were married on August 1, 1961; it was her first marriage and his third; a son was born of this union; they separated during October, 1964; the wife then filed a complaint for separate maintenance to which the husband counterclaimed for divorce on grounds of extreme cruelty and adultery; after a lengthy trial, the circuit judge entered final judgment on December 15, 1967, granting, among other things, a divorce to the husband but did not find the wife guilty of adultery. The appellate processes then commenced, resulting in the proceeding now before us.
In awarding the divorce, the final judgment stated:
"... it is the conclusion and the finding of the Court that neither party is domesticated ... In the present case, it is abundantly clear from the evidence of marital discord that neither of the parties has shown the least susceptibility to domestication, and that the marriage should be dissolved."
The wife initially attacks the award of a divorce. Certainly, "lack of domestication" was not one of the nine (9) grounds for divorce under Section 65.04, Florida Statutes, 1963, (the Florida divorce law governing this suit), however, "extreme cruelty" was a ground for divorce. Its definition was succinctly described in Diem, supra, at page 66, as follows:
"Extreme cruelty as ground for divorce is relative. What constitutes it may be determined by the degree of one's culture, his emotions, nervous reaction or moral sense. It may also be tested by acts or social conduct to which the spouse affected is allergic. The rapid change in social conventions may generate conditions that bring on extreme cruelty. One spouse may indulge a habit to which the other is allergic that would be extremely painful, depending on the nature of the affected spouse. A wife that chews tobacco may strain the connubial relation and the husband that dips snuff may do likewise. Any habitual indulgence on the part of one spouse that causes mental torture, undermines the health, or tends to dethrone the reason of the other, is sufficient to constitute extreme cruelty as ground for divorce." (emphasis supplied)
To grant a divorce on the ground of "lack of domestication" would in effect create a tenth ground under the cited statute and would be an improper invasion of the legislative province. Nevertheless, the divorce can be and is hereby sustained on the ground of "extreme cruelty." In reaching this conclusion we have considered the elementary theory that a trial court's judgment, even if insufficient in its findings, should be affirmed if the record as a whole discloses any reasonable basis, reason or ground on which the judgment can be supported. In other words, the findings of the lower court are not necessarily binding and controlling on appeal, and if these findings are grounded on an erroneous theory, the judgment may yet be affirmed where appellate review discloses other theories to support it. See In Re Estate of Yohn, Fla. 1970, 238 So.2d 290; Goodman v. Goodman, Fla.App. 1967, 204 So.2d 21; Bambrick v. Bambrick, Fla. App. 1964, 165 So.2d 449.
Sub judice, the record consists of thousands of pages of testimony which we have reviewed. Sufficient facts exist for a divorce to be awarded to the husband on the ground of "extreme cruelty." For this reason, that aspect of the judgment under review is sustained.
*226 The wife also asserts error in the trial court's alimony award to her of $3,000.00 per month, contending this to be inadequate. Admittedly, this sum appears to be sufficient, however, we must examine the record to determine whether the award is such that it will permit the wife to live in a manner reasonably commensurate with that provided for her by the husband during coverture and whether the husband has the ability to pay the award. In reaching a determination of "ability to pay," the husband's income alone is not the only factor for review. Among other things, consideration should be given to the husband's capital assets. In general, then, the primary criteria to be used in establishing the amount of alimony is the husband's ability to pay as above described, and the needs of the wife, taking into consideration the standard of living shared by the parties to the marriage. Chastain v. Chastain, Fla. 1954, 73 So.2d 66; Schiff v. Schiff, Fla. 1951, 54 So.2d 36; Klein v. Klein, Fla.App. 1960, 122 So.2d 205; Peteler v. Peteler, Fla.App. 1962, 145 So.2d 291; Sommers v. Sommers, Fla.App. 1966, 183 So.2d 744; Kaufman v. Kaufman, Fla. 1953, 63 So.2d 196; Astor v. Astor, Fla. 1956, 89 So.2d 645. But see also: Kahn v. Kahn, Fla., 78 So.2d 367, for a limitation on the amount of alimony award.
Sub judice, the husband's answer to his wife's charges admitted that "... he is a man of substantial means." The judgment under review found:
"With a gross 1965 income from family trusts totaling $521,888.47, the defendant may be considered a man of conspicuous wealth, although a maza of spendthrift restrictions, pledges, alienations and assignments for various purposes ... debts totaling $1,400,000; individual business operations involving helicopters, airplanes, race horses and real estate, and taxes reaching the current maximum 70 percent bracket overlying the whole, tend to rob the financial picture of much of its rosy hue."
Thus, while the trial judge in 1967 clearly considered all obligations of the husband, consideration of his assets was apparently limited to his 1965 trust income. The record, however, abundantly discloses that at age 40 (which arrived during litigation), the husband became entitled to a distribution of trust assets valued at approximately $2,500,000.00, and at age 50 he will become entitled to another similar distribution. Also, the husband is a contingent beneficiary under his mother's substantial trust arrangements.
Equally garnered from the record is the fact that during the marriage of these parties, and prior to their separation, the wife was afforded numerous privileges, such as: a $3,000.00 per month allowance to spend as she desired; clothing allowances of approximately $5,000.00 per month; the use of various automobiles, as well as the use of an airplane and helicopter at any time. To say the least the luxuries shared by these parties during cohabitation would equal the splendor of many of the sultans out of "Arabian Nights."
Patently, the alimony award of $3,000.00 per month was a reasonable sum at the time of the final decree and we approve it as such. However, the award, even though believed by the trial judge to be a reasonable amount at the time of his decree, should again be reviewed for purposes of determining the merits of an increase based upon a "full and complete" disclosure and consideration of the husband's financial condition and abilities to pay, inclusive of his present standard of living. This cause has been in litigation many years, and we can anticipate that additional testimony may be necessary to arrive at a conclusion on the merits of this issue. See also Florida Statute § 61.14. Therefore, the chancellor may want to examine the books and records relating the financial affairs and standard of living of the husband.
*227 The child support award of $750.00 per month obviously falls into the same category as the alimony award, and, similarly should be reviewed.
Unfortunately, when the dance of marriage has reached its "fine" and the time arrives to pay the fiddler, the predilections for unrestrained pleasures, more often than not, then turn into hues and cries of poverty and despair. Nonetheless, cloth must be cut to fit the pattern, and if excessive indulgences, as a customary norm, accompany private wealth they may very well establish a pattern.
Next in dispute is the court's disallowance of the wife's claim to certain insurance proceeds totaling $184,400.00 which were collected by the husband. These proceeds became payable by virtue of the loss of a 26 1/2 carat diamond ring being worn by the wife and taken from her during a robbery. During July, 1961, the husband purchased the ring at a cost in excess of $200,000.00. He gave it to the wife as an engagement ring. She accepted it and wore it. For all practical purposes these facts were corroborated through testimony of the husband's mother. The husband, however, after purchasing the ring and giving it to his wife then proceeded to insure it in only his name, and, subsequent to the robbery, he received the insurance proceeds on the loss. The wife sought to impose a constructive trust in the amount of these proceeds, however, the trial judge failed to award it. The competent, substantial, and preponderance of the evidence clearly shows the ring to have been a gift from the husband to the wife. Furthermore, the presumption of a gift through delivery to, acceptance and use by the wife of the ring was never successfully overcome. Turning then to the issue of a constructive trust, it is a general rule that a constructive trust arises where an abuse of confidence renders the acquisition and/or retention of property or proceeds by one party unconscionable against the other party. See Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419; Wilkins v. Wilkins, 1940, 144 Fla. 590, 198 So. 335; Metcalf v. Leedy, Wheeler & Co., 1939, 140 Fla. 149, 191 So. 690. These rules are applicable to the issue sub judice and the trial court erred in not imposing a constructive trust in favor of the wife for the amount of the insurance proceeds, that is, $184,400.00.
Also in contention is the wife's objection to disallowance of her claim to ownership of eight certain thoroughbred race horses, or the value thereof. Preponderate evidence exists to establish that these horses were kept, maintained, owned, and raced under the wife's name and her personal colors. The husband owned other horses and raced them under his individual name and separate colors. Furthermore, testimony was elicited to show that the spending allowance of $3,000.00 per month from husband to wife was to encourage her to bet on her own horses. When considered as a whole, the preponderance of evidence confirms the wife's ownership of the thoroughbreds. She is entitled to these horses, or their reasonable value, as well as to an accounting for their earnings.
Also in dispute is the trial court's denial "without prejudice" of the wife's claim for an adjudication of the husband's responsibility for certain outstanding bills incurred by the wife during marriage. Alluding to this, the final judgment states: "Claims of this nature are more appropriately litigated by the purported creditor and debtor in a court of law than in a court of chancery jurisdiction, and, therefore, the claim in such respect is denied without prejudice."
Admittedly, in a divorce action, to which the creditor of the spouses is not a party, the final judgment is not binding on the creditor. Nevertheless, the court's ruling can establish and put to rest the responsibility between the husband and wife for such debts. The bedrock to support this theory lies in the proposition that once a court has acquired jurisdiction for one purpose, it should dispose of all justiciable issues before it. Moore v. Price, 1929, 98 Fla. 276, 123 So. 768. Thus, the court below *228 erred when it did not proceed with a determination of the husband's responsibility for the bills in question. Naturally, such a determination should be without prejudice to the husband's rights to assert available defenses, if any, to any claim or suit that may be asserted by any creditor. To tarry a moment longer on this issue, we would be remiss if we did not remind the lower court of the legions of cases dispositive of the question of a husband's responsibility for bills incurred during marriage, including, but not limited to: Dixon v. Wright, Fla.App. 1968, 214 So.2d 787; Vaccaro v. Vaccaro, Fla.App. 1969, 224 So.2d 742; Astor v. Astor, supra.
In the cause sub judice the parties had been married for a period of more than three years during which she had born him a son and is not to be confused with the "marry in June and sue the following September" situation which would require an entirely different analysis, nor is it often that such enormous wealth and high standard of living during coverture is involved.
The other issues raised by the parties have been considered and are found to be without merit.
For reasons above stated the affirmances of the District Court of Appeal is quashed in part and affirmed in part, and this cause is remanded to the District Court with instructions to remand the case to the trial court for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS and BOYD, JJ., concur.