284 So.2d 407 (1973)
Judy Pearl DASH, Appellant,
v.
Philip DASH, Appellee.
No. 73-24.
District Court of Appeal of Florida, Third District.
October 24, 1973.
Milton E. Grusmark, Miami Beach, for appellant.
Jepeway, Gassen & Jepeway, Miami, for appellee.
Before PEARSON and CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
This is an appeal by the wife from a final judgment dissolving the marriage between the parties.
Judy Dash and Philip Dash were married in 1959. They lived in several different apartments in Miami Beach until 1971 when they separated, and the rental of these apartments ranged from $650.00 to $800.00 per month. The couple retained two full-time domestic employees, a chauffer-cook and a laundress-waitress.
Appellant received an $800.00 monthly allowance from her husband. The only bill she paid was the salary for the laundress-waitress. Mrs. Dash estimated her annual expenditure for clothing at $18,000.00. During the marriage, she purchased six furs and jewelry valued at $46,000.00, and the parties also traveled extensively.
Mrs. Dash is fifty-five years old. She had five operations during the marriage. Cataracts were removed from both of her eyes, and she had other physical problems requiring medical attention. Appellant did not work prior to, nor during the marriage. She cannot obtain a driver's license due to her eye condition.
Appellant estimated that she would require $1,800.00 a month to sustain herself *408 in the manner to which she was accustomed.
Appellee owns 27 1/2% of the stock of David and Dash, a public corporation. The stock is restricted, and appellee testified that if he sold it in a single transaction, it would be worth only 25¢ a share. Prior to 1971, Mr. Dash was drawing a salary of $1,173.00 per week, almost $61,000.00 a year. Thereafter, his salary declined to $700.00 per week at the time of trial. In 1969, appellee received an $11,000.00 bonus from the company, and in 1970 nearly $13,000.00. But, in 1971 and 1972 appellee received no bonus. He attributed these declines to bad business, although under cross-examination he acknowledged that the company's sales and profits were up. In addition, appellee's son, Jay Dash, during this period of time received salary increases almost matching his father's salary deductions.
About three months before the trial, Mr. Dash also loaned his son $125,000.00 at 3% interest, which appellee received after mortgaging property he owns under a partnership, 2425 Realty Associates. The property is leased to David and Dash, and payments exceed the new mortgage payments by $1,400.00, which is placed in a bank account.
The record also reveals that in 1969 and 1970 Mr. Dash made three loan applications and stated his net worth to be One Million Dollars and One Million, Four Hundred Thousand Dollars.
Mr. Dash testified that his weekly expenses are $423.50, and that he is in debt $44,000.00 which he borrowed for living expenses and for unsuccessful stock market investments.
At the conclusion of all the evidence, the trial court entered an order of dissolution of the marriage. Appellant was awarded $35,000.00 as lump sum rehabilitative alimony, payable in three years at the rate of $200.00 per week with the balance of $5,000.00 to be paid prior to the end of the third year. Articles of clothing, including the furs and jewelry, were awarded to appellant. The parties were each given an undivided half interest in the furniture and furnishings, and the court determined that appellant was entitled to reasonable attorney's fees.
Appellant's basic point on appeal is that the alimony awarded was inadequate because of the high standard of living maintained by the couple during the marriage and because appellant is not the proper subject for rehabilitative alimony. We agree.
The implementation of no-fault divorce did not change the basic nature and purpose of alimony, "to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining." Lefler v. Lefler, Fla.App. 1972, 264 So.2d 112. Our Supreme Court has recently stated that the new divorce law does not alter the general rule:
"The primary criteria to be used in establishing the amount of alimony is the husband's ability to pay as above described, and the needs of the wife taking into consideration the standard of living shared by the parties to the marriage." Firestone v. Firestone, Fla. 1972, 263 So.2d 223, 226.
The trial court in the cause sub judice entered his order awarding Mrs. Dash rehabilitative alimony. We realize that an alimony award will not be disturbed in the absence of a clear showing of an abuse of discretion. Singer v. Singer, Fla.App. 1972, 262 So.2d 731; Royal v. Royal, Fla.App. 1972, 263 So.2d 277; Sharpe v. Sharpe, Fla.App. 1972, 267 So.2d 665. However, the record in this cause clearly establishes that the alimony award was not adequate.
Appellant, at fifty-five years of age, had no history of employment. Her health was poor, and her eyesight was failing. The marriage between the parties *409 lasted thirteen years. During that period of time, the standard of living of the parties was high. They lived in luxury apartments, were aided by two full-time domestic employees, and traveled extensively. By its order the trial court assumes that within three years Mrs. Dash will be "rehabilitated" so as to adequately support herself. We do not think that the record demonstrates that appellant may be rehabilitated to support herself within three years or at any other foreseeable time.
An award of rehabilitative alimony calls for a relative assessment of the wife's needs and the husband's ability to pay. See Toth v. Toth, Fla.App. 1969, 228 So.2d 295. In Calligarich v. Calligarich, Fla. App. 1971, 256 So.2d 60, the court reversed a lump sum alimony of $3,600.00 to be paid at $200.00 a week:
"It is our opinion that, due to plaintiff's health, age, lack of assets and income, it is highly unlikely she will be able to support herself in eighteen months. Lump sum alimony is justified only where it serves a reasonable purpose, such as rehabilitation, or where the marriage's duration of the parties' financial position would make such an award advantageous to both. The wife's need and the husband's ability are still the correct equation to follow."
Appellee does not challenge the standard of living which he established during the marriage, nor appellant's health and lack of work or business experience. Rather, he asserts that since the parties separated in 1971 his ability to pay has diminished.
We are inclined to believe that the facts of this case closely fit an observation made by the Supreme Court in Firestone v. Firestone, supra:
"Unfortunately, when the dance of marriage has reached its `fine' and the time arrives to pay the fiddler, the predilections for unrestrained pleasures, more often than not, then turn into hues and cries of poverty and despair. Nonetheless, cloth must be cut to fit the pattern, and if excessive indulgences, as a customary norm, accompany private wealth they may very well establish a pattern."
In Klein v. Klein, Fla.App. 1960, 122 So.2d 205, this court stated:
"Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of a sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living." See also Massey v. Massey, Fla.App. 1967, 205 So.2d 1.
The record demonstrates that as late as the final two years of marriage prior to separation in 1971, appellee made loan applications stating his net worth in excess of a million dollars. In Elkins v. Elkins, Fla. App. 1969, 228 So.2d 105, this court also relied upon a statement of net worth in a loan application as a factor in concluding that an alimony award was inadequate.
We do not think appellee's showing of financial misfortune since the parties separated sufficiently rebuts the inference that he has a substantial source of income.
The record reflects that he had sufficient assets to make a $125,000.00 loan to his son three or four months prior to trial, and that property which he owned under a partnership was receiving $1,400.00 a month under a lease to David and Dash. Moreover, while appellee's salary decreased, his son's proportionately increased and a business partner who also owned a 27 1/2% interest in David and Dash and whose salary had initially declined at the same time appellee's was reduced had regained his original salary level.
The factual situation in the instant cause is similar to Sommers v. Sommers, Fla. *410 App. 1964, 169 So.2d 496. There the parties were married twelve years. The wife was awarded $18,000.00 as lump sum alimony and she maintained this was inadequate. The husband was a successful ladies' dress manufacturer who, upon selling out his business had over $250,000.00 in liquid assets and was the owner of a $30,000.00 home. The wife, in her fifties, had one operation due to a cancer condition. This court said that conservatively assuming that the wife required a minimum of $250.00 a month for support, the award would be exhausted in six years. We noted that the record did not show that the wife would not need support for a longer period of time nor that there was a good reason to terminate her support after six years.
Therefore, for the reasons stated and upon the authorities cited and discussed, we have concluded that the judgment appealed should be reversed and the cause remanded to the chancellor with directions to assess permanent alimony either in installments or in lump sum.
Reversed and remanded, with directions.