HENDRY, Judge.
Appellant-wife, respondent in the trial court, seeks review of a final judgment of dissolution of marriage.
Leon DeLones, age 59, and Ann Mason DeLones, age 58, were married approximately 33 years at the time the judgment now appealed was entered. Leon has for many years been a truck driver. He earns approximately $150 a week. Ann, formerly a City of Miami librarian, is retired due to a crippling arthritic condition. She receives $207.90 a month in Social Security disability benefits and $134.50 monthly from the city in retirement benefits. In addition, Ann has title to certain property located on the Miami River which produces an income of $376 per month. It is this Miami River property which compromises the dispute between the parties in this appeal. The trial court entered the following finding:
“2) The Petitioner, LEON De-LONES, having spent most of his adult life as the Respondent’s husband providing her most of the time with the means of support and having adopted her child and assisted in rearing Respondent’s son and having used his income and labor to support them and educate her son, this Court finds that he is entitled to greater consideration than a simple order of this Court dissolving the marriage. The Court, therefore, finds that the Petitioner is entitled to a one-half undivided interest as a tenant in common with Ann Mason DeLones in the following described property, to-wit:
Lots 17, 18, 19, 20 and 21, Paradise Park, Section 3, according to Plat thereof recorded in Plat Book 43, page 52 of the public records of Dade County, Florida,
and
Lot 22, of Paradise Park, Section 3, according to plat thereof recorded in Plat Book 43 at page 52 of the public records of Dade County, Florida
and the Respondent be and she is hereby ordered to convey to the Petitioner by good and sufficient deed of conveyance an undivided one-half interest in and to said property on or before December 1, 1973, failing in which the Clerk of the Circuit Court of Dade County, Florida, is hereby directed to execute a deed of conveyance in accordance with the provisions of this Order.”
In this petition for dissolution of marriage, Mr. DeLones maintained that he cannot read or write and for this reason his wife, Mrs. DeLones, had acted as his *587 general business emissary during the course of the marriage. In the petition and his testimony before the trial court, Mr. DeLones further contended that the Miami River property as well as certain other property in Maryland (at an earlier time solely in Mrs. DeLones’ name, then for a short time held as tenants by the entirety by both Mr. and Mrs. DeLones,[1] and subsequently conveyed to Mrs. DeLones’ brother, Roger Mason) was paid for through the husband’s labors and from the sale of a trucking business. Mr. DeLones alleged that at all times 'he believed the property was being held as a tenancy by the entirety rather than by Mrs. DeLones as her separate property.
The wife vigorously contested the claims made by the husband. She testified that from an early point in the marriage, there were marital problems and that twice before — in 1945 and 1970 — she filed for divorce then dropped the suits. There was testimony that Mrs. DeLones considered her husband to be financially irresponsible, that she objected to his habits of gambling at poker games and drinking, and that she accused Mr. DeLones of leaving home for two or three days at a time because of another woman.
Further,' Mrs. DeLones testified — corroborated by deposition testimony of her mother — that she and Mr. DeLones moved to Havre de Grace, Maryland in 1942, and the Maryland property was given to Mrs. DeLones only for a small down payment by her mother. The property allegedly was paid for by rental income derived therefrom. Mr. ■ DeLones’ claim that he put his own money toward the purchase was sharply controverted.
With respect to the Miami River property, Mrs. DeLones testified that she purchased it in 1951, after she and her husband had moved back to Florida, and that title was taken solely in her name. Again contrary to the husband’s claim, the wife maintained the money for the purchase was supplied by her family. The couple subsequently took up residence on the Miami River property.
By deposition, Mr. DeLones indicated that he was aware eight to ten years before trial in this case that his wife claimed the Miami River property was hers alone. Testimony from Mrs. DeLones’ son, David, also indicated that the husband was made aware at a much earlier time of his wife’s claim of sole ownership. However, Mr. DeLones specifically denied any knowledge that his name was not on the deeds to the Miami River property until about nine or ten months prior to trial.
In addition, despite the husband’s claim that his wife acted as his business emissary due to his inability to read and write, David DeLones, the son, testified that he often worked on his father’s truck, that they would make deliveries to Miami Beach, and that his father was capable of “out-counting” the person on the other side of a bill of lading. The son concluded, “I guess he was able to handle himself very well.”
At the conclusion of the presentation of the evidence by both parties, the court dissolved the marriage and entered the finding hereinabove set forth. Before the trial court, various theories were advanced by the husband in support of a determination that the husband was entitled to share as a tenant in common in the Miami River property. Among these were: fraud, constructive trust, reformation, special equity or lump sum alimony. Appellee argues before this court that there are elements of each of these theories involved in this *588 case; however, the trial court’s finding should be affirmed on general equitable principles that the husband is entitled to a one-half interest in the Miami River property. We cannot agree.
At the outset, we find that other than the husband’s own contention that his wife acted as his business agent, because of his illiteracy, the greater weight of the evidence as reflected by the record does not support an allegation of fraud or trickery exercised by the wife. Rigot v. Bucci, Fla.1971, 245 So.2d 51. Nor does the evidence justify reformation of the deeds to Miami River property. Allstate Ins. Co. v. Vanater, Fla. 1974, 297 So.2d 293, filed May 29, 1974, Case #44,126.
We also do not think the appellee satisfactorily established, by clear and convincing evidence, that he is entitled to either a constructive trust or a special equity in the Miami River property. Tanner v. Tanner, Fla.App.1967, 194 So.2d 702; Singer v. Singer, Fla.App. 1972, 262 So.2d 731.
The husband also is not entitled to a one-half interest in the property as lump-sum alimony where his monthly income, absent the property, will not be substantially less than his wife’s. See, Calligarich v. Calligarich, Fla.App.1971, 256 So.2d 60; Dash v. Dash, Fla.App. 1973, 284 So.2d 407.
We therefore turn our attention to the appellee’s contention that the trial court’s determination is supported by general equitable principles. We look to the court’s finding wherein the court stated that the husband having adopted the appellant’s son and, during the marriage, having assisted in the rearing of the son and having supported his wife and son is entitled to some “greater consideration” than a simple order dissolving the marriage.
In Arrington v. Arrington, Fla.App. 1963, 150 So.2d 473, this court stated that during a marriage:
"Each party is expected to be a help and companion to the other. We have not so far abandoned the idea of marriage as a unity of man and wife as to figure equities on the basis of the assistance one gives to the other in the performance of ordinary marital duties.” (150 So.2d at p. 477) See also, Owen v. Owen, Fla.1973, 284 So.2d 384; Kamensky v. Kamensky, Fla.App. 1973, 282 So.2d 670; Steinhauer v. Steinhauer, Fla.App. 1971, 252 So.2d 825.
In the Owen case, the Florida Supreme Court indicated that in the absence of proof of a special equity or an award in the nature of lump sum alimony, a decree for a husband to convey property held as joint tenants to his wife was improper. We think this reasoning logically extends to the instant situation with even stronger application where the wife holds the property separately in her name, and the trial court has ordered her to convey a one-half interest to the husband.
Therefore, it is our conclusion that the court’s finding that the husband is entitled to share a one-half undivided interest in the Miami River property must be reversed.
We have considered also the appellant’s contention that the court erred in failing to award costs and attorneys’ fees to the wife, and have concluded that no abuse of discretion has been demonstrated. Helsel v. Helsel, Fla.App.1962, 138 So.2d 99.
For the reasons stated and upon the authorities cited and discussed, the judgment appealed is affirmed and modified to eliminate therefrom paragraph (2) requiring the wife to convey a one-half interest in the Miami River property to the husband.
Affirmed as modified.

. From the record, it appears that Mrs. De-Lones in order to secure a $5,000 G-l loan from another brother, Richard, conveyed title in the Maryland property to him. Thereafter, when he conveyed the property back to Mrs. DeLones, she testified that Richard believed the property had to be in the joint ’ names of Mr. and Mrs. .DeLones. The wife testified that when she discovered, in Florida, that her husband’s name was on the deed, she revealed this to Mr. DeLones, and he accompanied her to a notary public to have his name removed from the deed.