308 So.2d 106 (1974)
Christal Clark KELLER, Petitioner,
v.
Henry Adolph KELLER, Jr., Respondent.
No. 45045.
Supreme Court of Florida.
December 4, 1974.
Rehearing Denied February 25, 1975.
Frank M. Marks, of Koeppel, Stark, Marks & Newmark, Miami, for petitioner.
Daniel Neal Heller of Heller & Kaplan, Miami, for respondent.
PER CURIAM.
We review by writ of conflict certiorari the per curiam opinion decision of the District Court of Appeal, Third District, in the case of Keller v. Keller, 287 So.2d 351.
On its face the majority per curiam opinion of the District Court when considered in relation to the more detailed explanation of the case in the dissenting opinion and pertinent portions of the record proper reflected conflict with other pertinent decisions invoking our jurisdiction. That a dissenting opinion may be the predicate for conflict certiorari, see Commerce National Bank in Lake Worth v. Safeco Ins. Co. (Fla. 1973), 284 So.2d 205.
*107 The conflict of decisions consists in the obvious abuse of discretion which is reflected in the niggardly amount of alimony awarded contrary to the rationale of other pertinent decisions. The dissenting opinion points out the wife's situation justifying a larger award of alimony. It reads in part:
"The [lump sum] award of only $7,200.00 as alimony to the cross-appellant wife was, in my view, an abuse of discretion. The record shows that the wife has no assets and no income. She has no special skills and does not even have a high school education. The trauma of this marriage and the loss of custody of her child indicate the truth of her contention that she needs to continue under the care of a psychotherapist.
"The cross-appellee husband has a stipulated net worth of over $3,000,000.00 and receives a yearly income of over $90,000.00. The parties met while the prospective wife was working as a grocery store check-out girl. The wife was eighteen; she was married to her husband for seven years and bore him a son.
"It is my view that the emancipation of women does not require that this former wife be cast adrift without resources or prospects. I would reverse that portion of the judgment allowing lump sum alimony in the amount of $7,200.00 payable at the rate of $50.00 per week and remand the cause for the assessment of rehabilitative alimony in accordance with the holding in Dash v. Dash, Fla.App. 1973, 3rd D.C.A., 284 So.2d 407."
We compared the alimony awarded in this case with the awards allowed in other cases, including Dash v. Dash, supra; McGuire v. McGuire (Fla.App. 1962), 140 So.2d 354; In Re Brown (Fla.App. 1971), 246 So.2d 166, and Firestone v. Firestone (Fla. 1972), 263 So.2d 223, as well as the principles of law enunciated in those cases.
In Dash v. Dash the Third District Court quoted with approval from Calligarich v. Calligarich (Fla.App. 1971), 256 So.2d 60, wherein the court reversed on appeal of the wife lump sum alimony of $3,600 to be paid at $200 per week, saying:
"`... Lump sum alimony is justified only where it serves a reasonable purpose, such as rehabilitation, or where the marriage's duration or the parties' financial position would make such an award advantageous to both. The wife's need and the husband's ability are still the correct equation to follow.'" 284 So.2d at 409.
In the Calligarich case the court concluded permanent alimony should be awarded, subject to later modification in the event of sufficient change in the circumstances of the parties.
The Third District Court of Appeal in Dash v. Dash quoted from Firestone v. Firestone, supra, as follows:
"`Unfortunately, when the dance of marriage has reached its "fine" and the time arrives to pay the fiddler, the predilections for unrestrained pleasures, more often than not, then turn into hues and cries of poverty and despair. Nonetheless, cloth must be cut to fit the pattern, and if excessive indulgences, as a customary norm, accompany private wealth they may very well establish a pattern.'" 284 So.2d at 409.
In the Firestone case we said:
"The wife also asserts error in the trial court's alimony award to her of $3,000.00 per month, contending this to be inadequate. Admittedly, this sum appears to be sufficient, however, we must examine the record to determine whether the award is such that it will permit the wife to live in [such] a manner reasonably commensurate with that provided for her by the husband during coverture and whether the husband has the ability to pay the award. In reaching a determination of `ability to pay,' the husband's income alone is not the only factor for review. Among other things, consideration *108 should be given to the husband's capital assets. In general, then, the primary criteria to be used in establishing the amount of alimony is the husband's ability to pay as above described, and the needs of the wife, taking into consideration the standard of living shared by the parties to the marriage... .
* * * * * *
"In the cause sub judice the parties had been married for a period of more than three years during which she had born him a son and is not to be confused with the `marry in June and sue the following September' situation which would require an entirely different analysis, nor is it often that such enormous wealth and high standard of living during coverture is involved." 263 So.2d at 226, 228.
The Third District Court in the Dash case quoted from Klein v. Klein (Fla.App. 1966), 122 So.2d 205:
"`Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of a sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living.' See also Massey v. Massey, Fla.App. 1967, 205 So.2d 1." 284 So.2d at 409.
In Dash the Court said:
"The factual situation in the instant cause is similar to Sommers v. Sommers, Fla.App. 1964, 169 So.2d 496. There the parties were married twelve years. The wife was awarded $18,000.00 as lump sum alimony and she maintained this was inadequate. The husband was a successful ladies' dress manufacturer who, upon selling out his business had over $250,000.00 in liquid assets and was the owner of a $30,000.00 home. The wife, in her fifties, had one operation due to a cancer condition. This court said that conservatively assuming that the wife required a minimum of $250.00 a month for support, the award would be exhausted in six years. We noted that the record did not show that the wife would not need support for a longer period of time nor that there was a good reason to terminate her support after six years." 284 So.2d at 409-410.
Contrasting the instant case with the Firestone case, we note that both wives were youthful; both had given birth to a son and both had enjoyed a high standard of living due to the very wealthy status of their spouses.
Taking into account the financial and other factual circumstances of the parties as reflected in the dissenting opinion and in the record proper before us, we conclude from a comparison of alimony awards in the cited cases and the legal principles announced therein that abuse of discretion was committed by the meagerness of the lump sum alimony to the petitioner. Judge Pearson's dissent sets forth the justification for a more realistic permanent award of alimony which we adopt.
After we accepted jurisdiction in this case we were at liberty to review the record, including transcript evidence. We note that the trial judge questioned a material witness, Gladys Butts, the nurse of the infant child of the parties, concerning the fitness of petitioner, the mother, to have custody of the child, and apparently without the knowledge of petitioner's counsel. For example in his initial question to Gladys Butts the transcribed report reflects the judge stated: "We are here by ourselves."
There is an acrimonious dispute between the parties and their respective counsel as to whether there was consent or oral stipulation on the part of petitioner's counsel that the judge could proceed ex parte to question the nurse. However, it is not necessary to our decision to resolve that dispute. Suffice it to say that a reading *109 of the reported testimony elicited from the nurse by the trial judge ex parte discloses that in the form taken it is very damaging to the wife's claims for custody of the child and support for herself and the child. While we highly respect the trial judge and his integrity, we are unable to dismiss an inference that his ex parte questioning of the nurse may have weighted the scales against the wife's side of the case in his mind.
As best considered, the taking of this testimony ex parte was unusual, if not improper, in the absence of counsel whether or not agreed to by petitioner's counsel. It may well have cast petitioner's side of the case in an irretrievably bad light with the trial judge which might have been mitigated had petitioner's counsel been present and participated in the examination. Compare McGuire v. McGuire (Fla.App.2d 1962), 140 So.2d 354, and In Re Brown (Fla.App.3d 1971), 246 So.2d 166.
It is our view the conflict of decisions warrants our quashing the decision of the District Court with direction that the cause be remanded to the Circuit Court to reconsider the entire cause de novo including the taking of further evidence as may be necessary for its proper resolution.
It is so ordered.
ADKINS, C.J., and ROBERTS, ERVIN, BOYD and McCAIN, JJ., concur.

ON PETITION FOR REHEARING
On consideration of the Petition for Rehearing and Petition for Rehearing as to Attorneys' Fees filed by attorneys for respondent, Response to Petition for Rehearing, Motion to Strike Petitions for Rehearing and Reply to Response to Petition for Rehearing,
It is ordered that said Petitions for Rehearing are denied.
ADKINS, C.J., ROBERTS and McCAIN, JJ., and ERVIN, (Ret.), J., concur.
ENGLAND, J., concurs in part and dissents in part (attached hereto).
ENGLAND, Justice (concurring in part and dissenting in part on rehearing).
Respondent filed timely petitions for rehearing challenging this Court's decision on the merits rendered in its per curiam opinion dated December 4, 1974 and its simultaneous award of attorney's fees for petitioner's counsel. I did not hear oral arguments or participate in the Court's initial deliberations in this case. My review of the record on appeal, for purposes of rehearing, suggests that I might have differed from the Court in its original disposition of this case on the merits.[1] On rehearing, however, I am constrained to consider only the narrow grounds for review set forth in Florida Appellate Rule 3.14(b). Applying that rule I find that respondent's case on rehearing is essentially a restatement of *110 his original arguments, and that no basis is presented to change the original decision of the Court as reflected in its ruling and opinion on the merits.[2]
With respect to the Court's order on legal fees, however, respondent suggests grounds to revisit the Court's original order which are both meritorious under the Rule 3.14(b) and persuasive. The Court set $10,000 as an attorney's fee for petitioner's appellate counsel, without the benefit of any record evidence on this subject before this Court. This fee was set under Florida Appellate Rule 3.16(e), which authorizes the assessment of attorney's fees by an appellate court or, on remand, by a trial court, provided in either event that such fees are allowable by law. I believe a trial court is better suited than an appellate court to develop evidence as to the factors which go into awarding attorney's fees,[3] and there is little reason to act here when the case has been returned to the trial court for a new evidentiary proceeding on the merits. In any event, no award should have been entered without a full adversary hearing either here or below.[4]
For these reasons, I would grant rehearing as to attorney's fees, vacate this Court's order of December 4 on that subject, and remand that issue for determination in the trial court along with the de novo review of the merits which has been directed.
NOTES
[1] The Court's original opinion makes no mention of respondent's assertion that this case is governed by Florida's "old" divorce law, rather than the 1971 "no-fault" divorce law on which the Court's decision is premised. This point of law was not analyzed by the trial court or the district court in their decisions, yet the "old" law would provide, based on the trial court's findings of fact, complete justification for petitioner's seemingly meager alimony award. The application of the new law's effective date (section 61.191(1), Fla. Stat.) to divorce cases commenced prior to July 1, 1971 has spawned controversy and diverse treatment in a number of cases. Carmel v. Carmel, 282 So.2d 6 (3d Dist.Ct.App.Fla. 1973) (application of the new law's concept of rehabilitation not retroactive); Melin v. Melin, 265 So.2d 414 (3d Dist.Ct.App.Fla. 1972) (alimony under new law held to apply retroactively). See also Ryan v. Ryan, 277 So.2d 266, 273-74 (Fla. 1973); Belcher v. Belcher, 271 So.2d 7, 9 n. 8 (Fla. 1972). The issue was squarely raised here. Under these circumstances, I believe the Court should have discussed and clarified that issue in this case.
[2] An excellent summary of what is and what is not proper for rehearing is set forth by Judge Wigginton in State v. Green, 105 So.2d 817, 818-819 (1st Dist.Ct.App.Fla. 1958).
[3] See Ruhnau v. Ruhnau, 299 So.2d 61, 66 (1st Dist.Ct.App.Fla. 1974).
[4] Fee by fiat imposes a dual hardship on respondent. Not only is respondent denied the opportunity to challenge the amount of the fee award, he is denied the chance to argue that the state's new divorce law (1) does not authorize attorney's fees for appellate practice and (2) does not authorize an appellate court to set the award, in light of the change from "any court" to "the court" in section 61.16, Fla. Stat.