## BOISVERT v BOISVERT

Case No. 88-01639 FC 25

Eleventh Judicial Circuit, Dade County

August 30, 1988

### APPEARANCES OF COUNSEL

**Daniel Keil** for petitioner/husband.

**Regina F. Zelonker** for respondent/wife.

### OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

### *FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE*

THIS CAUSE duly came on to be heard for final hearing on June 7, 1988, upon the petition for dissolution of marriage and the answer and counterpetition. Petitioner/Husband Thomas Boisvert (Husband), appeared with counsel, Daniel Kiel, and Wife, Charlene Boisvert (Wife), appeared with counsel, Regina F. Zelonker. At that time and thereafter, the court considered the evidence, adjudged the demeanor and credibility of the parties and their witnesses, and heard and considered arguments of counsel. Thereafter, the Court met with the attorneys for the parties for three (3) hours subsequent to the trial, discussed each asset in detail and carefully divided the assets in accordance with *Canakaris v Canakaris,* 382 So.2d 1197 (Fla. 1980). Based on that

touchstone and being otherwise fully advised, finds and decides the following:

## I. *The Evidence*

When a marriage is irretrievably broken, judicial effort is usually directed to an equitable distribution of the monies, real property and other assets of the parties. The income provider, usually the Husband, and the Wife are at odds and, unfortunately, are adversaries with no holds barred. Invariably, the Wife claims the Husband is extremely well-to-do, deals in cash, and secrets assets; and the Husband claims near-poverty, little income and no assets.

Here, the Wife advanced two contentions: (1) That the Husband maintained a safety deposit box in which he told her he kept $200,000 in cash, and that the Wife just prior to their separation actually saw that safety deposit box at the bank filled to the brim with neat packages of cash; and (2) That the standard of living of the parties over the past ten (10) years proves or confirms her contentions.

The evidence before the Court shows that the parties sold their house in Massachusetts for $165,000 (with substantial equity); paid $5,500 to move to Florida; that the Husband used his deposit box like a bank (close to eighty (80) times in the past three (3) years); that he gifted a Mercedes automobile to his wife paying all cash ($20,000); gave his Wife a Volvo for Mother's Day (all cash); took vacations costing approximately $5,000 annually; consulted a Swiss bank for money management; installed a $4,800 spa at the marital house (at least $3,000 of which was paid in cash); transacted from a separate checking account approximately $3,500 monthly; received envelopes of cash on a regular basis from Husband's commercial fishing ventures in New England; and that Husband had a quantity of silver bars (value of approximately $6,200). The marital home in Miami in which the parties lived is worth $145,000 subject to a mortgage of $66,000, or an equity of some $79,000. And, the Husband "looked to buy" a house and contiguous land, which had a purchase price of $1,200,000, so he could subdivide and sell a part and reside on the retained portion.

The federal income tax returns of the parties show adjusted gross income in 1986 of $17,365.00 and in 1985 of $9,511.40. And the testimony was that the same was true for the previous years.

## II. *The Law*

It is well-settled in Florida that a court can impute income and resources to a spouse although the source of that income and resources cannot be clearly established and do not appear on the spouse's

44

financial affidavit. As the District Court of Appeal, Third District, held in *Klein v Klein,* 122 So.2d 205, 207 (Fla. 3DCA 1960):

> Where the head of a family by supplying money over a period of years, establishes and maintains a standard of living on a certain financial level, it may be inferred, in the absence of sufficient showing to the contrary, that he has a source of income or financial status sufficient to enable him to continue to maintain his spouse in substantially the same manner of living.

To the same effect, but on a grand scale, *Firestone v Firestone,* 263 So.2d 223, 227 (Fla. 1972):

> Unfortunately, when the dance of marriage has reached its "fine" and the time arrives to pay the fiddler, the predilections for unrestrained pleasures, more often than not, then turn into hues and cries of poverty and despair. Nonetheless, cloth must be cut to fit the pattern, and if excessive indulgences, as a customary norm, accompany private wealth they may very well establish a pattern.

As previously noted, experience shows that it is common in dissolution cases for the income provider to show an amount of income and assets lower than prior years or lower than the parties' established expense pattern. In such cases, the Court should impute income to that spouse. In *Bucci v Bucci,* 350 So.2d 786 (Fla. 3DCA 1977), the income tax returns of the parties did not justify the amount of support that was awarded. However that court said:

> We have previously had occasion to point out that where a husband has set a standard of living different from his ledger sheets and has maintained that standard over some period of time, the court is justified in holding that he has funds which are not visible. See *Klein v Klein,* 122 So.2d 205 (Fla. 3 DCA 1960); *Farbman v Farbman,* 208 So.2d 648 (Fla. 3d DCA 1968). The Supreme Court of Florida has approved the proposition that the amount of alimony need not always be measured by the present earnings of the husband. See *Keller v Keller,* 308 So.2d 106 (Fla. 1974)

350 So.2d at 789. See also *Anderson v Anderson,* 451 So.2d 1030 (Fla. 3DCA 1984).

The parties' standard of living also provided the basis for the Court's holding in *Seitz v Seitz,* 471 So.2d 612 (Fla. 3DCA 1985). The husband in that case was self-employed. The trial court imputed the sum of $60,000 per year to the husband as an undisclosed source of income. This was based on the marital expenses and testimony that the husband had continual access to ready cash in large amounts.

45

In the case at bar, the Wife proved as is required by law, her needs and the Husband's ability to pay.

But when a wife's needs can be supplied by the husband, based on his income as it is established and disclosed by his living expenditures during prior years, then in the absence of a full disclosure by the husband showing his inability to pay, the wife should not be deprived of amounts she needs for her support because of a husband's contention of inability to pay, which is contrary to the manifest weight of the evidence bearing on the point. *Klein v Klein,* 122 So.2d 205, 206 (Fla. 3DCA 1960).

### III. *Findings of Fact*

1. Based on the exhibits and testimony presented at trial, it is clear from the relatively grand lifestyle and expenses of the parties for at least the past ten years, in comparison to their declared income, that Husband has imputed income and assets which provide Husband with the ability to pay the amount of permanent alimony, lump sum alimony, child support and other relief ordered herein.

2. It is clear that the Husband (as the income provider) substantially understated his income annually on his federal income tax returns.

3. As a matter of proof and of policy, the Court cannot specifically find the existence of approximately $200,000.00 in cash assets in Husband's possession for purposes of the division of assets herein.

### IV. *It is Ordered as follows:*

1. This Court has jurisdiction of the parties and the subject matter of this action.

2. The marriage between Husband Thomas Boisvert and Wife Charlene Boisvert is dissolved because it is irretrievably broken.

3. The parties are mutually restrained from annoying, harassing or molesting each other, either physically or verbally in any manner, publicly or privately, directly or indirectly.

4. The parties shall have shared parental responsibility of their minor children, Jacques Boisvert born on June 19, 1972, and Remi Boisvert born on October 12, 1978. Wife Charlene Boisvert shall be the children's primary residential parent and as such they shall reside with her. Husband Thomas Boisvert shall have reasonable and liberal visitation rights based on a schedule to be agreed upon by the parties.

5.A. Husband Thomas Boisvert shall pay permanent alimony to Wife Charlene Boisvert in the monthly amount of One Thousand Five

Hundred ($1,500) Dollars commencing on September 1, 1988 and a like sum on the 1st day of each consecutive month thereafter until the death of either party or remarriage of the Wife. Said monthly amount is subject to reevaluation as each of the parties' children becomes eighteen years of age and Husband's obligation for child support ceases to such child.

| PAYEE | PAYOR |
|---|---|
| Charlene Boisvert | Thomas Boisvert |
| 6330 Simmons Street | 6429 Cowpen Road, #U206 |
| Miami Lakes, FL 33015 | Miami Lakes, FL 33014 |
| Soc. Sec. #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 | Soc. Sec. #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 |

5.B. (i) Said alimony payments are to be made through the Central Depository.

(ii) Payments shall be made payable to Clerk, Circuit Court, and forwarded to the Central Depository, 140 West Flagler Street, Room 1502, Miami, Florida 33130.

(iii) Payment shall be made by cash, check or money order. For identification and account purposes, the case number shall be included with each payment.

(iv) The Central Depository shall collect as a fee for receiving and disbursing alimony payments, 3 percent of each payment made through the Central Depository. This fee, however, shall not exceed the sum of $15.00 per periodic payment.

(v) The parties affected by this Final Judgment shall immediately inform the Central Depository of any change of name, address, employer, place of employment of source of income.

6. Husband shall convey to Wife by quitclaim deed free and clear of all liens and encumbrances except for the existing mortgages, all of his interest in and to the former marital home located at 6330 Simmons Street, Miami Lakes, Florida legally described as follows:

Lot 2 in Block 4 of MIAMI LAKES EAGLE NEST SECTION PART ONE, according to the Plat thereof, as recorded in Plat Book 106 at Page 14 of the Public Records of Dade County, Florida.

If Husband fails to make the conveyance as required, Ron Lowy, Esq., 407 Lincoln Road, Miami Beach, Florida 33139 is appointed as commissioner of this Court or Special Master to execute and deliver an appropriate deed and take such further action as necessary to convey the property on behalf of Husband. If such action is necessary, Wife may, but shall not be required to, apply to this Court for confirmation of the transfer and taxation of all fees, expenses and costs involved

against Husband. Wife shall be responsible for the payment of the existing mortgage, insurance, liens, and taxes on the above property as they become due, and shall hold Husband harmless therefrom.

7.A. Husband shall convey to Wife free and clear or all liens and encumbrances (if any) *except for* those in existence before the parties' separation on December 4, 1987, any and all interest he may have in the following personal property: All the furniture, appliances and fixtures located at 6330 Simmons Street, Miami Lakes, Florida, *except for* the armoir, night stand, drum box, desk and chair, assorted hand tools, personal clothing and shoes, charts, family pictures, college diploma, captain's license, certificate of title to Dusky boat, and small filing cabinet, which shall be conveyed by Wife to Husband.

7.B. Husband shall convey to wife (or relinquish his interest in) the following: the 1983 Volvo; the 1977 Mercedes Benz; and any jewelry in Wife's possession.

8. Wife shall convey to Husband by quitclaim deed of all her interest in and to the vacant land located in Mattapoisett, Plymouth County, Massachusetts, presently in the name of Wife.

If Wife fails to make the conveyance as required, Ron Lowy, Esq., 407 Lincoln Road, Miami Beach, Florida 33139 is appointed as commissioner of this Court or Special Master to execute and eliver an appropriate deed and take such further action as necessary to convey the property on behalf of Wife. If such action is necessary, Husband may, but shall not be required to, apply to this court for confirmation of the transfer and taxation of all fees, expenses and costs involved against Wife. Husband shall be responsible for the payment of the existing mortgages, insurance, liens and taxes on the above properties as they become due, and shall hold Wife harmless therefrom.

9. Wife shall convey to Husband free and clear of all liens and encumbrances (if any) except those in existence before the parties separation on December 4, 1987, any and all interest she may have in the following personal property: boat known as the "Black Duck"; interest in Black Duck Fisheries, Inc.; and interest in Nantucket Shals Fisheries, Inc.; any and all claims and causes of action regarding the boat known as the "Lark"; Dusky boat; any monies owed by John Demott to Husband.

10. Wife shall retain her Individual Retirement Account as her sole property, and Husband shall retain his Individual Retirement Account as his sole property.

11.A. Husband shall pay to Wife as child support the sum of Five

Hundred ($500) Dollars per month, per child, commencing on September 1, 1988 and a like sum on the 1st day of each consecutive month thereafter until each child reaches the age of eighteen years, dies, marries, or becomes emancipated, whichever shall first occur.

| *PAYEE* | *PAYOR* |
|---|---|
| Charlene Boisvert | Thomas Boisvert |
| 6330 Simmons Street | 6429 Cowpen Road, #U206 |
| Miami Lakes, FL 33015 | Miami Lakes, FL 33014 |
| Soc. Sec. #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 | Soc. Sec. #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 |

*Name of Children for Whom Support is to be paid:*

Jacques Boisvert, date of birth: June 19, 1972 and Remi Boisvert, date of birth: October 12, 1978.

*Manner and Method of Payment:*

(i) Said child support payments are to be made through the Central Depository.

(ii) Payment shall be made to Clerk, Circuit Court, and forwarded to the Central Depository, 140 West Flagler Street, Room 1502, Miami, Florida 33130.

(iii) Payments shall be made by cash, check or money order. For identification and account purposes, the case number shall be included with each payment.

(iv) The Central Depository shall collect as a fee for receiving and disbursing support payments, 3 percent of each payment made through the Central Depository. This fee, however, shall not exceed the sum of $15.00 per periodic payment.

(v) The parties affected by this Final Judgment shall immediately inform the Central Depository of any change of name, address, employer, place of employment of source of income.

11.B. So long as child support payments continue for each minor child, Husband shall maintain life insurance naming each such respective minor child as irrevocable beneficiary, in a face amount of no less than $50,000.00.

12. Husband, in addition to the periodic child support obligations and as long as he is obligated to pay said child support, shall maintain medical insurance covering each child with coverage at least as comprehensive as the present medical insurance policy covering the children.

Husband shall provide Wife with all information and forms necessary for claims to be promptly and properly presented. In addition,

Husband, shall be responsible for any and all reasonable and necessary medical, dental, orthodonture and optical expenses of the child not reimbursed by insurance.

13. As to the joint liquid assets which were subject to this Court's prior order, Temporary Injunction as to Assets, dated February 16, 1988, it is represented that the remaining principal balance is $130,000.00. Husband is awarded $55,000.00 of said remaining balances, comprised of $40,000.00 plus accrused interest in account number 738-53931 at Merrill Lynch Pierce, Fenner & Smith, Inc. (hereinafter referred to as "Merrill Lynch") and $15,000.00 of the balance in account number 09-18567-6-02 at Financial Federal Savings and Loan Association. Wife is awarded $75,000.00 comprised of $40,000.00 plus accrued interest in account number 738-53952 at Merrill Lynch and $35,000.00 of the balance in account number 09-18567-6-02 at Financial Federal Savings and Loan Association. Husband shall receive forty-two (42%) percent and Wife shall receive fifty-eight (58%) percent of the accrued interest to be added to the above awards of principal. The depositories, Financial Federal Savings and Loan Association and Merrill Lynch are authorized and directed to release the above amounts as ordered, except that as to Husband, his share from Financial Federal shall be distributed as follows: $10,000.00 by cashier's check payable to "Scherman and Zelonker, P.A." and $5,000.00 plus his proportionate accrued interest payable to Husband. Said distribution to Scherman and Zelonker, P.A. is for attorneys' fees to Wife's attorneys' of record pursuant to the parties' agreement and paragraph 14 herein.

14. The Husband shall pay the attorneys' fees and costs incurred by Wife in connection with this action. The parties have agreed upon the sum of $10,000.00 as the contribution to said attorneys' fees by Husband to Wife. The Court retains jurisdiction to determine the amount of costs to be paid by Husband to Wife's attorney and to enter an award for said costs.

15. Jurisdiction is reserved to enforce the terms of this Judgment. Furthermore, both parties shall conduct themselves in a manner consistent with the intent and purposes of this Judgment.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 30th day of August, 1988.