ROBINSON, STEVEN D.,
Associate Judge, concurring in part and dissenting in part.
The trial judge was given a difficult assignment to be equitable and fair in light of the overwhelming evidence of Mr. Metz’s duplicity, under the table dealing and tax evasion. He committed no error in exercising his discretion except on two issues. First, I agree with the majority of the panel that before enforcing the final judgment by contempt the judge must determine again Mr. Metz’s present ability to pay his $7,005 arrearage in temporary support. Second, and here I disagree with the panel, there was not sufficient and competent evidence that Mr. Metz had an imputed net income of $50,000 which then justified the court’s monthly award of $1,000 for permanent periodic alimony.
To begin with Mr. Metz has a current negative net worth. Hidden assets were suspected but not discovered. On weekly earnings of between $500 to $600 a week, Mr. Metz is required to pay the alimony and $125 weekly support for each of two children.[1] He must maintain health care coverage and two personal life insurance policies for the benefit of his children. He is responsible for all of the family debts except the first mortgage on the family home, attorney’s fees of $10,500 and costs of $1,806.30. He must also reimburse his wife $12,000 on account of a dissipated insurance fund, and he must deed the marital home to effectuate equitable distribution. Until the home is sold he is ordered to pay a continuation of the pre-final hearing temporary child and marital support amounting to $2,550 a month.* From the sale of his transmission business, the trial judge required $29,000 to be applied to pay the second mortgage on the marital home.
The reason for this otherwise inequitable seeming result is that the trial judge found that Mr. Metz sold his valuable transmission business for less than its market value, thereby giving up what had been at least $75,000 yearly income. At the time of the $70,000 sale the business was in debt to numerous creditors, the Internal Revenue Service in particular. In addition to the proceeds being used for the second mortgage payoff, the sales contract of the business called for the first thirty-two of seventy monthly $1,046.71 installments to go to the creditors. The final judgment stated in part:
9. That the Respondent voluntarily divested himself of a business which earned him approximately $75,000.00 for *43 the twelve (12) month period preceding the Final Hearing held herein.
10. That the Respondent has the ability, based upon his recent work history, and occupational qualifications to earn at least $50,000 net per year.
11. That the Respondent, during the pendency of these proceedings voluntarily sold his business, the assets of the Defendant herein, for the sum of $70,-000.
12. That in light of the fact that the Defendant corporation grossed approximately $250,000.00 as reflected on its last tax return, as well as the fact that said amount reflected almost a $100,-000.00 increase from the preceding corporate fiscal year, that the Respondent has willfully divested himself of an income producing business and that the sale price of the business shocks the conscience of the Court.
13. That the Respondent is willfully underemployed.
I see the salient question to be whether there was substantial competent evidence to support the judge’s imputing a $50,000 net salary. Evidence supports the trial judge’s finding that the business was worth more than $70,000. An accountant testified to a higher value based on an analysis of the business’s two preceding year’s gross revenues. Our scope of review limits us to question “whether there is logic and justification for the result,” and is it “unlikely that no reasonable person would adopt the view taken by the trial court”? Marcoux v. Marcoux, 464 So.2d 542, 544 (Fla.1985). “It is not our function to re-evaluate the testimony presented to the trial judge or substitute our judgment for his.” Desilets v. Desilets, 377 So.2d 761, 763 (Fla.2d DCA 1979). See Shaw v. Shaw, 334 So.2d 13 (Fla.1976); Westerman v. Shell’s City Inc., 265 So.2d 43 (Fla.1972). However, even by these strict standards, the evidence indicates that the facts of this case do not support the imputing of $50,000 net income.
Starting with McRae v. McRae, 52 So.2d 908 (Fla.1951), Florida has had a long line of cases allowing trial judges to impute income. For a history see generally Estreicher & Komreich, “Imputing Income: Proving the Unprovable,” Fla.B.J, April 1985, at 56. Judge Gunther summarized the concept in Maddux v. Maddux, 495 So.2d 863, 864 (Fla. 4th DCA 1986):
Where a former husband has an ability to earn if he so desires, the trial judge may impute an income to the husband according to what he could earn by the use of this best efforts to gain employment equal to his capabilities, and on that basis enter an award of alimony as if the husband were in fact earning the income so imputed.
In all the cases which impute income there is competent evidence either that the past lifestyle of the parties circumstantially proved a higher than reported income or that the spouse to whom income is imputed was willfully not working to capacity. In Maddux the evidence supported the trial judge’s finding that the husband was underemployed, and in Leone v. Weed, 474 So.2d 401 (Fla. 4th DCA 1985), the record supported the finding that the former husband could regain his past financial position. In Seitz v. Seitz, 471 So.2d 612 (Fla. 3d DCA 1985), the husband’s standard of lavish living proved an undisclosed source of income. He also had a substantial net worth. According to the Estreicher and Komreich article, the court imputed income in Anderson v. Anderson, 451 So.2d 1030 (Fla. 3d DCA 1984), because the record indicated that the husband had substantially reduced his debts despite his claim that he had more expenses than income. The trial judge was justified to believe that the husband had available resources to pay an award of alimony higher than shown by direct proof. See also Keller v. Keller, 308 So.2d 106 (Fla.1974); Bascuas v. Bascuas, 538 So.2d 520 (Fla. 3d DCA 1989); Klein v. Klein, 122 So.2d 205 (Fla. 3d DCA 1960).
Other cases have found that under their circumstances imputing income in awarding alimony or child support was error. Sheiman v. Sheiman, 472 So.2d 521 (Fla. 4th DCA 1985), found that the parties’ standard of living was too high when con *44 sidered in the light of their finances. Therefore, the award of alimony and child support was remanded for reconsideration. Implicitly the judge’s imputing income was error. In Wolfman v. Wolfman, 344 So.2d 893, 893-94 (Fla. 4th DCA 1977), “the husband did not have the ability to pay the amount of alimony and child support that he was actually ordered to pay. And there were no other circumstances shown by the evidence to support an award beyond the husband’s ability to pay.” The facts in Sokol v. Sokol, 441 So.2d 682 (Fla. 2d DCA 1983), indicated that the unemployed husband was capable of working, but there was no evidence that he was employable at his former income level.
The facts of this case are more similar to the facts in Sheiman, Wolfman and Sokol. Mr. Metz’s business has been sold, and there is no proof in the record that Mr. Metz received anything other than the sales price and possibly some proceeds from receivables which a post final hearing order requires him to remit to his wife. Finding that Mr. Metz undersold his business does not prove that there are salaried positions available in his field for $50,000 net, and no evidence of this fact was presented. In addition, it was unreasonable for the trial judge to conclude without testimony that Mr. Metz’s earning capacity as a salaried employee could equal his previous earnings as the salaried owner of his own business. If Mr. Metz did willfully divest himself of his business to frustrate his wife and not to pay his numerous creditors, then according to Bowen v. Bowen, 471 So.2d 1274 (Fla.1985), he may be found in criminal as opposed to civil contempt. This case precisely presents the point of law discussed in Bowen wherein the supreme court receded from Faircloth v. Faircloth, 339 So.2d 650 (Fla.1976). If a respondent previously had the ability to pay periodic alimony and child support at a particular level but divests himself of his ability, civil contempt is no longer considered an appropriate remedy.
Consistent with the law in all the above-cited cases, availability of a better position must be a necessary pre-condition in order to impute to a spouse income. A present ability to pay must by logical definition contain a plan for a trial judge to direct a party to comply. Without a source of funds an order to pay becomes an abuse of discretion. If when a final judgment is entered there is no ability to pay periodic support, not only is the final judgment unenforceable through contempt, it is error to have entered that part of the judgment in the first place.
I would therefore remand the case to additionally reconsider the award of alimony based upon Mr. Metz’s actual salary. If his circumstances have changed to the better, a motion for modification would be very appropriate.

. The older child reached eighteen in November of 1988. This court relinquished jurisdiction to allow the trial court to modify primary residence. On December 15, 1988, the trial court modified primary residency of the remaining minor child in favor of the husband. The court also awarded the husband $250 monthly child support, retroactive to September 15, 1989.